

SEYFARTH
ATTORNEYS SHAW LLP

World Trade Center East

Two Seaport Lane

Suite 300

Boston, MA  02210-2028

617-946-4800

fax 617-946-4801

www seyfarth com

Writer's direct phone
(617) 946-4877

Writer's e-mail
ksinclair@seyfarth com

September 10, 2004

**BY ELECTRONIC FILING**

Clerk of the Court
United States District Court for
   the District of Massachusetts
Central Division
Harold D. Donohue Federal Building
Suite 502
595 Main Street
Worcester, MA  01608

> Re:     *Grossman v. Nicolaci*, *Civil Action No. 03-12641-FDS*

Dear Madam or Sir:

The above-referenced case is scheduled for a Pre-Trial Conference on September 17, 2004.  Previously, this case was pending before the U.S. Bankruptcy Court as Adversary Proceeding No. 02-1109-JNF.  Before the reference was withdrawn and the matter was redocketed at the U.S. District Court, the parties submitted a Pre-Trial Memorandum.  Pursuant to a discussion with your office earlier today, the parties hereby resubmit the Bankruptcy Court Pre-Trial Memorandum.

Please do not hesitate to contact me if you have any questions.

Very truly yours,

SEYFARTH SHAW LLP

Kent D.B. Sinclair

KDBS:len

BRUSSELS     WASHINGTON, D.C.     SAN FRANCISCO     SACRAMENTO     NEW YORK     LOS ANGELES     HOUSTON     CHICAGO     BOSTON     ATLANTA

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE:<br><br>CLIFTEX CORPORATION<br>     Debtor. | Chapter 7<br>Case No. 00-15532-JNF |

|  |  |
|---|---|
| IN RE:<br><br>STEWART F. GROSSMAN,<br>TRUSTEE<br><br>     Plaintiff,<br><br>v.<br><br>DOMENIC NICOLACI<br>JOHN NICOLACI<br>ROSALIE HASSEY<br>LISA BOLING<br>LORI BOLING RANDALL<br><br>     Defendants | Adv. Proc. No. 02-1109 |

## JOINT PRETRIAL MEMORANDUM.

Pursuant to the June 7, 2002 Order of the Court, the parties to this Adversary Proceeding submit this Joint Pretrial Memorandum.

### Preliminary Statement

The plaintiff, Stewart F. Grossman, is the Chapter 7 Trustee of the Debtor, Cliftex Corporation. The defendants Domenic and John Nicolaci, are former officers and shareholders of the Debtor. Rosalie Hassey, Lisa Boling, and Lori Randall are relatives of Domenic Nicolaci

who also held shares of stock in the Debtor. In this action, the plaintiff seeks to recover from the

defendants on theories of fraudulent transfer and breach of the duties owed to the Debtor in

connection with the defendants' sale of stock in the Debtor back to the Debtor. The defendants

have filed counterclaims against the plaintiff, seeking recovery on theories of indemnity, breach

of warranty, and breach of a promissory note. There is a timely demand for a jury trial in this

action.

I.    Witnesses

A.    Witnesses For Plaintiff

| Witness Name: | Witness Address & Telephone # | Expected To Be Called OR May Be Called |
|---|---|---|
| Stewart F. Grossman | c/o Looney & Grossman LLP, 101 Arch St. Boston MA. 617-951-2800 | Expected |
| Joel Anapol | 108 Lakeshore Drive T-41 North Palm Beach, FL. | May Be Called |
| Rex Morris | 471 Warwick Neck Ave. Warwick, R.I. 02889 | Expected |
| Domenic Nicolaci | Bella Vista Island P.O. Box D-6 Fairhaven, MA 02719 | Expected |
| Jeffrey Maimon | 149 Charles River St. Needham, MA 02492 | Expected |
| Robert Temkin | 1611 Commonwealth Ave. Newton, MA. | Expected |
| Jeffrey Robards | c/o Ernst & Young | May Be Called |
| Robert DelGenio | c/o Ernst & Young | May Be Called |
| John Nicolaci | 36 Indian Cove Rd. Marion, Ma. 02738 | Expected |
| Richard Sebastiao | c/o RAS Management Advisors | May Be Called |
| Rosalie Hassey | 7 Maplewood Street Mattapoisett, MA 02739 | May Be Called |
| Lisa Boling | 7 Maplewood Street Mattapoisett, MA 02739 | May Be Called |
| Lori Boling Randall | 7 Maplewood Street Mattapoisett, MA 02739 | May Be Called |
| Andrew Robin | c/o Congress Financial Corporation 1133 Avenue of the Americas New York, NY 10036 | May Be Called |
| Mr. John Williamee | c/o Congress Financial Corporation 1133 Avenue of the Americas New | May Be Called |

| | York, NY 10036 | |
|---|---|---|
| Harvey B. Mickelson, Esq. | c/o Mickelson, Barnett & Associates 30 Cornell Street New Bedford, MA 02740-1709 | May Be Called |
| Gregory L. White, Esq. | c/o Seyfarth Shaw Two Seaport Lane Boston, MA 617-946-4800 | May Be Called |
| Jeffrey Warbet | c/o Amalgamated Life Insurance Company 730 Broadway, 10th Floor New York, NY 10003-9511212-539-5000 | May Be Called |
| Judith Greenspan, Esq. | c/o Amalgamated Life Insurance Company 730 Broadway, 10th Floor New York, NY 10003-9511212-539-5000 | May Be Called |
| David Houseman | Houseman & Assoc. 2903 Braly Place Chattanooga, TN. 37415423-876-7846 | May Be Called |
| Paul Gricus | RAS Associates 22 Union St. Jamestown, R.I. 02835 | May Be Called |
| Leonard Schneider | 28 Market St. Swansea, MA. 02777508-379-0800 | May Be Called |
| Larry Correira | 98 Spring St. New Bedford, MA. 02740508-999-0259 | May Be Called |
| George Brier | 30 Pacheco Dr. North Smithfield R.I. 02896 | May Be Called |
| Daniel Danaghy | 26 Ward St. New Bedford, MA. 02740508-992-0114 | May Be Called |
| Paul Hancock | 489 Fisher Rd. No. Dartmouth, MA 508-636-6925 | May Be Called |
| George Moskos | 168 Williams St. Taunton, MA. 508-823-7235 | May Be Called |
| Craig Jalbert | C/o Verdolino & Lowey, P.C. Pine Brook Office Park 124 Washington Street Foxborough, MA 02035 | Expected |
| Barbara Sikorski | 33 Bridge St. Fairhaven, MA. 02179508-992-1142 | May Be Called |

B.  Witnesses For Defendants

| | | |
|---|---|---|
| Andrew Robin | c/o Congress Financial Corporation, 1133 Avenue of the Americas, New York, NY 10036 | Expected |
| Richard Sebastiao | c/o RAS Management Advisors, 599 Ocean Avenue, Newport, RI | Expected |
| Joel Anapol | 108 Lakeshore Drive, T-41 North Palm Beach, FL | Expected |
| Robert H. Temkin | 611 Commonwealth Avenue, Newton, MA | Expected |
| Jeffery Maimon | 149 Charles River Street, Needham, MA | Expected |
| Domenick Nicolaci | Bel Vista Island, P.O. Box D-6, Fairhaven, MA | Expected |
| Rosalie Hassey | 7 Maplewood Street, Mattapoisett, MA  02739 | Expected |
| Lisa Boling | 7 Maplewood Street, Mattapoisett, MA  02739 | Expected |
| Lori Boling Randall | 7 Maplewood Street, Mattapoisett, MA  02739 | Expected |
| John Nicolaci | | Expected |
| Jeffrey Warbert | c/o Amalgamated Life Insurance Company, 730 Broadway, Tenth Floor, New York, NY | Expected |
| Rex Morris | 471 Warwick Neck Avenue, Warwick, RI | Expected |
| Keeper of Records Fleet Bank | 100 Federal Street, Boston, MA | Expected |
| Stewart F. Grossman | Looney & Grossman, 101 Arch Street, Boston, MA | Expected |
| Charles P. Kindregan | Looney & Grossman, 101 Arch Street, Boston, MA | Expected |
| Craig Jalbert | Verdolino & Lowey PC, Pine Brook Office Park, Foxborough, MA | Expected |
| Pamela A. Harbeson | Looney & Grossman, 101 Arch Street, Boston, MA | Expected |

Deposition Transcripts To Be Offered

    A. Depositions To Be Offered by Plaintiff

        Plaintiff may use portions of Rule 2004 Examinations of Rex Morris, Joel Anapol, Domenic Nicolaci at trial. Each of these transcripts was stenographically transcribed and has been provided to all parties. Plaintiff reserves its right to use any deposition transcript for impeachment purposes

    OBJECTION:

The Defendants will object to the use of all or any portions of the 2004 examinations, including but not limited to the transcripts of the examinations of Rex Morris, Joel Anapol and Domenick Nicolaci.

    B. Depositions To Be Offered by Defendants

The Defendants may use portions of the transcripts of the depositions of Andrew Robin and Richard Sebastiao.

    OBJECTION:

The plaintiff objects to the use of deposition transcripts for witnesses that are available at trial within the meaning of Fed.R.Evid. 804

II. Expert Witnesses

    A. Plaintiff's Experts / Defendant's Objections To Qualifications

| Expert | Objection to Qualifications |
|---|---|
| Craig Jalbert<br>Verdolino & Lowey, P.C.<br>Pine Brook Office Park<br>124 Washington Street<br>124 Washington St., Foxborough, MA 02035 | No Objection To Qualifications |
| R. Glen Wehrwein, CPA, MSA, MBA<br>Verdolino & Lowey, P.C.<br>Pine Brook Office Park<br>124 Washington St., Foxborough, MA 02035 | No Objection To Qualifications |

B.  Defendants' Experts / Plaintiff's Objections To Qualifications

| Expert | Objection to Qualifications |
|---|---|
| K. Ramesh<br>111 Huntington Ave.<br>Tenth Floor<br>Boston, MA.  02199 | Plaintiff does not object to qualifications, but reserves the right to file a <u>Daubert</u> motion. |
| Richard Sebastaio<br>RAS Management Advisors<br>599 Ocean Avenue<br>Newport, RI | Plaintiff does not have a report and therefore does not know the opinion to be offered, so reserves its right to object to qualifications based on the particular opinion offered.[1] |

---

[1] R. Sebastaio has been deposed by the parties and as a fact witness. During the course of his deposition and anticipated testimony, he may render certain opinions with respect to projections and financial statements and, therefore, be deemed an expert.

III.   Proposed Exhibits

    A.   Plaintiff's Proposed Exhibits:

| EXHIBIT NO. | DESCRIPTION | ADMITTED | OBJECTION |
|---|---|---|---|
| 1 | Stock Purchase Agreement between Cliftex Corporation, John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, Lori Boling, Joel Anapol, and Walter Anapol (the "Stock Purchase Agreement") | X | |
| 2 | Addendum to the Stock Purchase Agreement dated January 16, 1998 | X | |
| 3 | Promissory Note for $580,000 from Cliftex Corporation to Domenic Nicolaci | X | |
| 4 | Promissory Note for $200,000 from Cliftex Corporation to John Nicolaci. | X | |
| 5 | Consulting Agreement between Domenic Nicolaci and Cliftex Corporation | X | |
| 6 | Two-party release between Congress Financial Corporation and Domenic Nicolaci | X | |
| 7 | Two-party release between Congress Financial Corporation and John Nicolaci. | X | |
| 8 | Agreement for Relief Program to which Cliftex Corporation was a signatory (the "Agreement for Relief Program"). | X | |
| 9 | Terms of Relief Proposal to which Cliftex Corporation was a signatory (the "Terms of Relief Proposal") | X | |
| 10 | Correspondence from Amalgamated Life Insurance Company to Cliftex | X | |

| | | | |
|---|---|---|---|
| | Corporation dated October 1, 1996 | | |
| 11 | Audited Financial Statement Cliftex Corporation for year end June 1990 | X | |
| 12 | Audited Financial Statement Cliftex Corporation for year end June 1991 | X | |
| 13 | Audited Financial Statement Cliftex Corporation for year end June 1992 | X | |
| 14 | Audited Financial Statement Cliftex Corporation for year end June 19903 | X | |
| 15 | Audited Financial Statement Cliftex Corporation for year end June 1994 | X | |
| 16 | Audited Financial Statement Cliftex Corporation for year end June 1995 | X | |
| 17 | Audited Financial Statement Cliftex Corporation for year end June 1996 | X | |
| 18 | Audited Financial Statement Cliftex Corporation for year end June 1997 | X | |
| 19 | Audited Financial Statement Cliftex Corporation for year end June 1998 | X | |
| 20 | Second Addendum Dated May 26, 1998 To Stock Purchase Agreement Dated January 16, 1998 | X | |
| 21 | July 14, 2000 Letter from Amalgamated Insurance re: Cliftex has incurred withdrawal liability of over $11 million. | | Relevancy and Hearsay |
| 22 | November 22, 1999 Report by Houseman & Assoc. | | Relevancy and Hearsay |
| 23 | August 16, 2000 Voluntary Petition Under Chapter 7 | | Relevancy and Hearsay |
| 24 | December 6, 1995 Letter of Intent between the Anapols and the Nicolacis | X | |
| 25 | September 16, 1996 Letter | | Relevancy and Hearsay |

| | | | |
|---|---|---|---|
| | from Greg White to Cliftex Board of Directors | | |
| 26 | December 3, 1997 letter from Mickelson to Greg White re: Transfer of automobiles to John Nicolaci | | Relevancy and Hearsay |
| 27 | Copy of Titles for three automobiles signed over by Cliftex to the Nicolacis | | Relevancy and Hearsay |
| 28 | Nicolaci copy of June 3, 1995 Audited Financial Statements of Cliftex Corporation, with handwritten note on Note 5 (Pension Plan) "What is the rest of the story?" | | Relevancy and Hearsay |
| 29 | April 27, 1995 legal report on how to avoid liability of Joel and Domenic's real estate ventures for Cliftex's underfunded pension liability when withdrawal occurs. | | Relevancy and Hearsay |
| 30 | Coverage Sheet and Cover of $5 million life insurance policy on D. Nicolaci, owned by Cliftex Corp. | X | |
| 31 | September 13, 1995 Memo of meeting with D. Nicolaci and CFO re: need for cash, problems with creditors, limitations on advertising due to past failure to pay bills, disrupted production due to creditor pressure, etc. | | Relevancy and Hearsay |
| 32 | November 6, 1995 report of Ernst & Young regarding results of efforts to sell Cliftex corp. | | Relevancy and Hearsay |
| 33 | April 23, 1996 Board minutes and resolutions and attached Letter of Intent with The Men's Warehouse. | | Relevancy and Hearsay |
| 34 | February 2, 2000 Memo by Houseman of meeting with Cliftex trade creditor | | Relevancy and Hearsay |
| 35 | July 21, 2000 WARN Letters to Employees and Union | | Relevancy and Hearsay |

| | | | |
|---|---|---|---|
| | agents, government officials re: Plant closing | | |
| 36 | Handwritten notes re: employee layoff plan | | Relevancy and Hearsay |
| 37 | Handwritten notes re: Observations Of Status of Cliftex | | Relevancy and Hearsay |
| 38 | Expenses flowing through Cliftex including affiliated companies (JN 0331) | | Relevancy and Hearsay |
| 39 | July 17, 1996 letter to White (JN0619) | | |
| 40 | Letters re: Taiwanese company interest (JN0667-673) | | Relevancy and Hearsay |
| 41 | Feb. 20, 1996 letter re: letter of intent w/attachments (JN0678-0681). | | Relevancy and Hearsay |
| 42 | Sept. 22, 1997 Memo re: proposed transaction (JN0692) | | Relevancy and Hearsay |
| 43 | March 20, 1996 letter from Amalgamated Life Insurance Co. to Contributing Employer with Memorandum dated March 19, 1996 from Gary Ford and Lonie Hassel to Trustees Retirement Fund of Amalgamated Insurance Fund. | | Relevancy and Hearsay |
| 44 | George Brier file memo dated August 19, 1996 regarding the "arrangement to provide relief to the Retirement Fund of the Amalgamated Insurance Fund" with enclosures thereto. | | Relevancy and Hearsay |
| 45 | September 25, 1996 Memo from George Brier to Rex Morris regarding "extended terms to paying off Cliftex's withdrawal liability. | | Relevancy and Hearsay |
| 46 | Fax of Agreement For Relief Program sent by Mickelson, Barnett & Assoc. to George Brier on October 2, 1996 | | Relevancy and Hearsay |

| | | | |
|---|---|---|---|
| 47 | George Brier memorandum dated October 2, 1996 to Rex Morris enclosing the "final agreement with the PBGC." | | Relevancy and Hearsay |
| 48 | Cover page of Brier memorandum of October 2, 1996 with handwritten management notes. | | Relevancy and Hearsay |
| 49 | Handwritten notes from Cliftex PBGC folder dated October 3, 1996 at 10:10 A.M. | | Relevancy and Hearsay |
| 50 | Selected sections of FASB documentation | | |
| 51 | Management Agreement between Domenic Nicolaci and Belleville Realty Corporation dated January 16, 1998. | | Relevancy and Hearsay |
| 52 | Agreement of lease between New Bedford Princeton Realty Corporation and Cliftex Corporation dated January 16, 1998. | | Relevancy and Hearsay |
| 53 | Agreement of lease between Belleville Realty Corporation and Cliftex Corporation dated January 16, 1998 | | Relevancy and Hearsay |
| 54 | Promissory Note from Cliftex Corporation to Joel Anapol in the amount of $515,000. | X | |
| 55 | Promissory Note from Cliftex Corporation to Joel Anapol in the amount of $300,000 | X | |
| 56 | Amended and Restated Term Promissory Note from Cliftex Corporation to Congress Financial Corporation dated March 31, 1998. | X | |
| 57 | Curriculum Vitae of Craig R. Jalbert | X | |
| 58 | Curriculum Vitae of R. Glen Wehrwein | X | |
| 59 | August 16, 1996 letter from Amalgamated Insurance Fund | X | |

| 60 | July 3, 1997 notes prepared by Rex Morris | | Relevancy and Hearsay |
| 61 | Documents reflecting payments to the defendants (checks, bank statements, wire transfers, etc) | X | |

B. Defendants' Proposed Exhibits:

In addition to the documents noted above as exhibits for the Plaintiff for which the

Defendants have no objection, the Defendants would propose offering the following exhibits:

| EXHIBIT NO. | DESCRIPTION | ADMITTED | OBJECTION |
| --- | --- | --- | --- |
| 1. | Congress Financial Corporation Audit Report 10/21/97 | | Relevance ("R") Hearsay ("H") |
| 2. | Congress Financial Amendment No 10 to Financing Agreement | X | |
| 3. | RAS Management Advisors correspondence re: Business and Operating Plan Review dated December 26, 1997 | | R, H |
| 4. | Congress Financial Corporation Amendment No. 11 to Financing Agreement dated as of March 1, 1998 | X | |
| 5 | Correspondence from Sebastiao to Anapol dated October 13, 1997 | | R, H |
| 6. | Cliftex Business Plan as reviewed by Sebastaio | | R, H Authenticity ("A") |
| 7. | GAP Disclosure Checklist, Ernst & Young for 1997 audit | | R, H |
| 8. | GAP Disclosure Checklist, Ernst & Young for 1998 Audit | | R, H |
| 9. | Ernst & Young Summary Review Memo | | R, H |
| 10. | Notes, Ernst & Young 1998 Audit (Document EY02639-EY02652) | | R, H |
| 11. | Notes and Assumption of Financial Projections, Ernst & Young (Document EY06643-EY06645) | | R, H |
| 12. | Fleet Commitment Letter 1997 | | R, H |
| 13. | Fleet due diligence | | R, H, A |

| 14. | Complaint filed by the Trustee against Joel Anapol, et als. | | R |
| 15. | Motion and Settlement Agreement with Joel Anapol, et als. | | R |
| 16. | Trustee's discovery and investigation file regarding the claims of Cliftex against Joel Anapol, et als. | | R, H, Privileged |
| 17. | Letter dated July 9, 2003 from The Amalgamated Insurance Fund to David Reier, including single page Calculation of Net Agreed Mass Withdrawal Liability at 01/01/99 | | R, H, A |

III.   Confirmation of Exchange of Exhibits

The parties hereby confirm that they will exchange copies of the above exhibits.

IV.   Agreed-Upon Facts

1.   The debtor is Cliftex Corporation ("Cliftex")

2.   The debtor filed a voluntary Chapter 7 petition on August 16, 2000.

3.   Stewart F. Grossman is the duly appointed, qualified and acting Chapter 7 Trustee of the estate of the debtor.

4.   Domenic Nicolaci is a resident of Massachusetts.

5.   On January 16, 1998 and prior thereto, Domenic Nicolaci was a director, officer, and stockholder of Cliftex.

6.   John Nicolaci is a resident of Massachusetts.

7   On January 16, 1998 and prior thereto, John Nicolaci was a director, officer, and stockholder of Cliftex.

8.   Rosalie Hassey is the daughter of Domenic Nicolaci.

9.   On January 16, 1998 and prior thereto, Rosalie Hassey was a stockholder of Cliftex and employed by Cliftex.

10.    Lisa Boling is a granddaughter of Domenic Nicolaci.

11.    On January 16, 1998 and prior thereto, Lisa Boling was a stockholder of Cliftex.

12.    Lisa Boling is also known as Lisa Boling Perry.

13.    Lori Boling Randall is a granddaughter of Domenic Nicolaci.

14.    On January 16, 1998 and prior thereto, Lori Boling Randall was a stockholder of
       Cliftex.

15.    On January 16, 1998, John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa
       Boling, Lori Boling Randall, Joel Anapol, and Walter Anapol, and Cliftex entered
       into a Stock Purchase Agreement (the "Stock Purchase Agreement").

16.    John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, and Lori Boling
       Randall executed the Stock Purchase Agreement.

17.    At the time he entered into the Stock Purchase Agreement, Domenic Nicolaci was
       an officer, director, and shareholder of Cliftex Corporation.

18.    Pursuant to the Stock Purchase Agreement, Domenic Nicolaci received a wire
       transfer or certified check in the amount of $1,050,000 from Cliftex Corporation.

19.    Pursuant to the Stock Purchase Agreement, Domenic Nicolaci received a
       Promissory Note for $580,000 from Cliftex Corporation.

20.    Pursuant to the Promissory Note he received from Cliftex Corporation, Domenic
       Nicolaci received payments totaling at least $200,000.

21.    At the time he entered into the Stock Purchase Agreement, John Nicolaci was an
       officer, director, and shareholder of Cliftex Corporation.

22.    Pursuant to the Stock Purchase Agreement, John Nicolaci received a wire transfer
       or certified check for $1,000,000 from Cliftex Corporation.

23. Pursuant to the Stock Purchase Agreement, John Nicolaci received a Promissory Note in the amount of $200,000 from Cliftex Corporation.

24. On January 16, 1998, Domenic Nicolaci, John Nicolaci, Joel Anapol, and Walter Anapol, and Cliftex entered into an Addendum to the Stock Purchase Agreement.

25. Pursuant to the Stock Purchase Agreement, Rosalie Hassey received a wire transfer or certified check in the amount of $150,000 from Cliftex Corporation.

26. Pursuant to the Stock Purchase Agreement, Lisa Boling received a wire transfer or certified check in the amount of $25,000 from Cliftex Corporation.

27. Pursuant to the Stock Purchase Agreement, Lori Boling Randall received a wire transfer or certified check in the amount of $25,000 from Cliftex Corporation.

28. Pursuant to the Stock Purchase Agreement, Domenic Nicolaci entered into a Consulting Agreement with Cliftex Corporation for a term of seven years at a fee of $30,000 per year (the "Consulting Agreement").

29. Domenic Nicolaci received payments of $60,000 from Cliftex Corporation pursuant to the Consulting Agreement.

30. As part of the sale of his stock to Cliftex Corporation, Domenic Nicolaci received a transfer of a Rolls Royce automobile from Cliftex Corporation.

31. As part of the sale of his stock to Cliftex Corporation, John Nicolaci received a transfer of a Ferrari automobile from Cliftex Corporation.

32. As part of the sale of his stock to Cliftex Corporation, John Nicolaci received a transfer of a Cadillac automobile from Cliftex Corporation.

33. Pursuant to the Stock Purchase Agreement, Domenic Nicolaci received a Release of his personal guaranty of Cliftex's debt to Congress Financial Corporation.

34.    Pursuant to the Stock Purchase Agreement, John Nicolaci received a release of his
personal guaranty of Cliftex's debt to Congress Financial Corporation.

35    Cliftex Corporation was a signatory to an Agreement for Relief Program along
with the Pension Benefit Guaranty Corporation, the Clothing Manufacturer's
Association of America, the Trustees of the Retirement Fund of the Amalgamated
Insurance Fund, and others, effective as of July 15, 1996 (the "Agreement for
Relief Program").

36.    The Agreement for Relief Program incorporated by reference a separate document
entitled "Terms of Relief Proposal."

37.

V.    Disputed Facts

1.    Whether John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, Lori
Boling Randall were "insiders" of the debtor, as that term is used in Section
101(31)(B) of the Bankruptcy Code, at the time of the Stock Purchase
Agreement?

2.    What was the total value of transfers made by Cliftex to John Nicolaci, Domenic
Nicolaci, Rosalie Hassey, Lisa Boling, and Lori Boling Randall?

3    What was the value of the consideration given by John Nicolaci, Domenic
Nicolaci, Rosalie Hassey, Lisa Boling, Lori Boling Randall to Cliftex?

4.    Whether Cliftex received reasonably equivalent value in consideration for the
transfers made by Cliftex to John Nicolaci and Domenic Nicolaci.

5.    What was the purpose of the transfers to John Nicolaci, Domenic Nicolaci,
Rosalie Hassey, Lisa Boling, and Lori Boling Randall?

6.   Whether the debtor was in a "Zone Of Insolvency" at the time of the transfers to John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, and Lori Boling Randall?

7.   Whether Cliftex was solvent or insolvent at relevant times?

8.   If Cliftex was insolvent at any time, when was Cliftex insolvent?

9.   Whether the transfers to John Nicolaci and Domenic Nicolaci constituted breaches of the duties owed by John Nicolaci and Domenic Nicolaci to the debtor and/or the creditors of the debtor.

10.  Whether the transfers to John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, Lori Boling Randall were fraudulent transfers.

11.  At the same time as he entered into the Stock Purchase Agreement, Domenic Nicolaci entered into a Management Agreement with Belleville Realty Corporation dated January 16, 1998 (the "Management Agreement").

12.  Domenic Nicolaci received payments of at least $140,000 pursuant to the Management Agreement.

13.  There are creditors of Cliftex Corporation whose claims arose prior to the transfers made by Cliftex to John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, and Lori Boling Randall.

14.  Cliftex has breached its obligations under the Promissory Notes issued to Domenick Nicolaci and owes Domenick Nicolaci the balance due thereon, plus accrued interest to the date of the petition.

15.  Cliftex has defaulted on its obligations to John Nicolaci pursuant to the terms of the Promissory Note and owes John Nicolaci the balance due thereon, plus

interest to the Petition date.

16.   Cliftex has breached its obligations to Domenick Nicolaci pursuant to the
      Consulting Agreement and owes Domenick Nicolaci the balance due thereon.

17.   Cliftex has breached its obligation to Domenick Nicolaci and to John Nicolaci to
      maintain medical insurance coverage and, as a result thereof, owed Domenick
      Nicolaci and John Nicolaci for any costs and expenses incurred by them in
      connection with obtaining medical insurance coverage.

18.   Pursuant to the terms of the Bylaws, Cliftex agreed to indemnify John Nicolaci
      and Domenick Nicolaci with respect to certain claims brought against them in
      their capacity as Directors.

19.   Pursuant to the terms of the Bylaws and Indemnity Agreement, John Nicolaci and
      Domenick Nicolaci are entitled to indemnity for all costs and expenses, including
      attorneys' fees, along with any other liabilities incurred in connection with the
      litigation.

20.   John Nicolaci and Domenick Nicolaci's claim for indemnity is an administrative
      claim pursuant to Section 503 of the Bankruptcy Code.

21.   Cliftex failed because of the mismanagement of Joel Anapol and Walter Anapol.

22.   Cliftex failed because of the mismanagement of Joel Anapol and Walter Anapol
      in obtaining for themselves excessive compensation and benefits.

23.   Cliftex failed because of the wrongful activities of Joel Anapol and Walter
      Anapol amounting to waste of corporate assets.

24    Pursuant to the Promissory Note he received, John Nicolaci received payments
      Cliftex of at least $95,833.18.

25.    Domenic Nicolaci received payments of $45,000 for life insurance from Cliftex pursuant to the Addendum to the Stock Purchase Agreement.

26.    Domenic Nicolaci received payment of $600,000 from the sale of the life insurance policy insuring the life of Domenic Nicolaci.

27.    During the period 1996 to April 1, 2000, Cliftex paid gross wages totaling $28,689,918, and made contributions to the employee's pension plan of 10.33%, or $2,963,668, and received a credit of 9%, or $2,582,093, thereby reducing its potential mass withdrawal liability to $9,075,167 (rounded to the nearest whole dollar) as of April 1, 2000.

VI.    Legal Issues

    1.    Whether the transfers to John Nicolaci and Domenic Nicolaci constituted breaches of the duties owed by John Nicolaci and Domenic Nicolaci to the debtor and/or the creditors of the debtor.

        a)    Whether defendants violated duties of loyalty and care to the debtor?

        b)    Whether defendants violated duties of loyalty and care to the creditors of the debtor?

        c)    Whether the debtor was insolvent or in the zone of insolvency at the time of the stock transfers?

    2.    Whether the transfers to John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, and Lori Boling Randall were fraudulent transfers?

    3.    Whether John Nicolaci, Domenic Nicolaci, Rosalie Hassey, Lisa Boling, Lori Boling Randall were "insiders" of the debtor, as that term is used in Section 101(31)(B) of the Bankruptcy Code, at the time of the Stock Purchase Agreement?

    4.    Did the subsequent misconduct by Joel Anapol and Walter Anapol cause the failure of Cliftex?

    5.    Does the Trustee's settlement with Joel Anapol and Walter Anapol constitute satisfaction of the Trustee's claim?

    6.    Does the Trustee's settlement with Joel Anapol and Walter Anapol release the Nicolacis from liability?

    7.    Are the Nicolacis entitled to a credit against any liability they may have to the

Trustee in the amount of the settlement between the Trustee and Joel Anapol and Walter Anapol?

8.   Is the Agreed Mass Withdrawal Liability of Cliftex pursuant to the PBGC Relief Program a contingent or non-contingent liability?

9.   Is the Trustee judicially estopped from denying that any harm sustained by the creditors of Cliftex was as a result of the mismanagement of Cliftex by Joel Anapol and Walter Anapol?

10.   Is the Trustee judicially estopped from denying that the wrongful conduct of Joel Anapol and Walter Anapol caused or contributed to the financial failure of Cliftex?

11.   Is the Trustee judicially estopped from denying that the mismanagement of Joel Anapol and Walter Anapol caused the financial failure of Cliftex?

VII.   Statement of Plaintiff's Case

The debtor, Cliftex, was in the business of making, distributing, and selling men's clothing. Cliftex made suits, sport coats, and other men's clothing items under a variety of trade names. Cliftex was a major employer in the depressed economy of New Bedford, Massachusetts. Many families in the area depended on Cliftex for employment and livelihood.

By the 1990's, Cliftex's business was in a state of decline. Overseas operations were selling clothes at lower prices and Cliftex could not compete. Cliftex's cash flow was impaired, its sales were declining, and its retail operations were losing money. Cliftex was also party to an underfunded multi-employer pension plan. In 1996, as a result of the problems in the industry and the pension liability, the Pension Benefit Guaranty Corporation and various industry groups developed a "Relief Program" and Cliftex became a signatory to the Program. The Relief Program fixed Cliftex's pre-1996 liability for the underfunded pension plan at a set amount and provided a payment plan for that debt. From at least 1996, Cliftex was insolvent.

In early 1998, Domenic and John Nicolaci, two insiders of Cliftex, sold their shares in Cliftex to Cliftex. Cliftex paid millions of dollars to these insiders even while its business was declining and it had no prospects for success. Inevitably, Cliftex stopped operations by mid-2000 and filed for bankruptcy on August 16, 2000. Hundreds of employees lost their jobs, and hundreds of creditors were left unpaid. The terms of the Relief Program also required Cliftex to immediately pay a withdrawal liability of over $11,000,000.

The inside sale of the Nicolaci stock to Cliftex was a fraudulent transfer. It was also clearly a breach of the duties of loyalty and care owed by the Nicolacis to Cliftex and its creditors. This insider transaction allowed two corporate officials to take millions of dollars out of the company while hundreds of employees and creditors were left holding the proverbial bag. The failure of Cliftex was devastating to the New Bedford

area and many families that once depended on Cliftex have themselves wound up in bankruptcy. The Trustee is entitled to recover the fraudulently transferred assets of Cliftex.

VIII.   Statement of Defendant's Case

The claims by the Chapter 7 Trustee relate to a transaction that occurred in January of 1998 pursuant to which Cliftex acquired the stock held by the Nicolaci family. In 1998, Cliftex Corporation was a manufacturer of clothing. Prior to the transaction, the stock of Cliftex was held 50% by the Nicolaci family, principally John and Domenick Nicolaci, and 50% by the Anapols, primarily Walter and Joel. Beginning in 1997, the Anapols expressed an interest in acquiring sole control over Cliftex and, in connection therewith, buying the stock of the Nicolacis. After some negotiations, the Nicolacis agreed to sell their stock. The transaction was ultimately structured by the Anapols as a repurchase of the Nicolaci stock by Cliftex. The purchase price for the stock was to be paid partly with cash at the closing, and the balance in notes as defined in the agreement.

The funding for the cash portion of the acquisition was from a loan from Congress Financial in the approximate amount of $1,000,000 and a loan from Joel Anapol of approximately $880,000. Prior to the buyout, the Anapols prepared and presented a business plan to support the buyout and the increase in the loan from Congress Financial. RAS was requested by Congress Financial to review the business plan and advise Congress Financial as to whether the assumptions underlying the plan were reasonable. RAS reviewed the Business Plan and concluded that the underlying assumptions were reasonable.

Cliftex continued in business after the January 1998 transaction until August of 2000, when it filed a Chapter 7 proceeding. Clearly, there were numerous reasons for Cliftex's

financial decline between 1998 and its bankruptcy filing in 2000. Many of the causes were outside the control of Cliftex and a function of the general industry downturn. Additionally, at least according to the Chapter 7 Trustee, Cliftex's economic decline was hastened by the activities of the Anapols. The Trustee brought a separate complaint against the Anapols alleging looting of the company and waste, which was recently settled for a payment of $250,000. The settlement was based on the Anapols' inability to pay.

The claim as presented by the Trustee against the Nicolacis is that Cliftex was insolvent as of January 1998. Therefore, the stock held by the Nicolacis had no value. From this, the Trustee then concludes that the transaction was a fraudulent transfer because Cliftex did not receive reasonably equivalent value in that Cliftex paid cash and signed promissory notes, in exchange for which Cliftex received stock of no value. The Trustee's argument as to insolvency hinges upon the unfunded pension liability of Cliftex.

Cliftex was a member of a multi-employee plan. In July of 1996, Cliftex, along with many of the other members of that plan, entered into agreements for relief with the PBGC. Pursuant to those agreements, Cliftex entered into an "Agreed Mass Withdrawal Liability Agreement," pursuant to which Cliftex acknowledged that its unfunded liability was $11,657,259. Cliftex further agreed that upon the termination of the Plan, any liability of Cliftex to the Plan would be paid over a period of time (20 years). The Plan further provided that Cliftex would receive a credit against the unfunded liability for the regular contributions made by Cliftex to the Plan. You will note that the audited financial statements do not carry the full unfunded pension liability. The audited financial statements only reflect the current portion of the unfunded liability. This treatment is in accordance with recognized accounting standards.

Notwithstanding the forgoing, the Trustee erroneously asserts that Cliftex was insolvent because of the unfunded pension liability.

The Trustee case fails for two principals reasons. The first is that Cliftex did, in fact, receive reasonably equivalent value for entering into the transaction to acquire the Nicolacis' stock. Cliftex was a closed corporation, in substance having two shareholders, the Nicolacis and the Anapols. Because it was a closed corporation, the relationship between the shareholders was more in the nature of a partnership. (In fact the Nicolacis and the Anapols were taxed as if the Cliftex was a partnership) Further, the stockholders in a closed corporation are entitled to receive compensation for their interest, which compensation is usually in the form of employment with attendant wages and other benefits. Accordingly, unlike traditional shareholders, the Nicolacis, as shareholders in a closed corporation, had the right to receive certain benefits flowing from their ownership interest, which benefits were typically in the form of employment. When the Nicolacis sold their stock to the corporation, they gave up their rights to receive the benefits of a shareholder in a closed corporation. In other words, they resigned as officers of the company, gave up their wages and other benefits that were due to them. The business plan as reviewed by RAS described a net saving to Cliftex by reason of the purchase of Nicolacis' stock interest and the termination of benefits to be in excess of $400,000 annually. The net benefit is the differential between the payments made to the Nicolacis and the payments that would have been due to them as shareholders over time. Thus, Cliftex received fair consideration in exchange for purchasing the Nicolacis' stock; the consideration being the extinguishment of the corporation's obligations to pay the Nicolacis.

The second reason that the Trustee's case must fail is that Cliftex was not insolvent in January of 1998. The question of solvency/insolvency of Cliftex in January of 1998 hinges upon the treatment of the unfunded pension liability. If the full amount of the unfunded pension liability is treated as an absolute non-contingent liability of Cliftex in 1998, then Cliftex is insolvent. However, only the current portion of the unfunded liability should be treated as a liability for the determination of solvency, and therefore Cliftex is solvent and the Trustee's claims fail as a matter of law. Cliftex's liability under the PBGC Agreement was calculated based solely on a hypothetical mass withdrawal from the pension fund. The liability itself was contingent on Cliftex withdrawing from the fund or the fund terminating. Moreover, Cliftex ultimately failed as a business for reasons totally unrelated to the unfunded pension liability. Pursuant to the terms of the PBGC Agreement, Cliftex could and did reduce the unfunded pension liability merely by continuing to pay its customary current pension obligations to employees – reducing its contingent liability by approximately 83.3 cents for every one dollar paid. Between 1996 and April 1, 2000, Cliftex had already reduced its mass withdrawal liability by over $2.5 million in this fashion. Once the fund terminated, triggering Cliftex's liability, Cliftex could apply 100% of its customary pension obligations to paying down the mass withdrawal liability.

Pursuant to the Uniform Fraudulent Transfer Act (Gen. Laws 109A), a debtor is insolvent if the sum of the debtor's probable debt is greater than all of the debtor's assets at fair valuation. However, for purposes of determining insolvency under the Massachusetts Uniform Fraudulent Conveyance Act, a contingent liability is not, per se, probable. In order for a debt to be probable for the purpose of establishing insolvency, the Trustee must show that its contingency was likely to occur such that the liability was likely to become fixed. This general case law has been

carried over into the Uniform Fraudulent Transfer Act. Accordingly, Cliftex was not insolvent because it was a going concern with a reasonable prospect of continuing as a going concern; therefore, the liabilities as of 1998 were only the current portion of the unfunded pension liability.

STEWART F. GROSSMAN,
CHAPTER 7 TRUSTEE,

By his attorneys,

Charles P. Kindregan, Esq. (BBO #554947)
Pamela A. Harbeson, Esq. (BBO #561479)
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA  02110
(617) 951-2800

DOMENIC NICOLACI, ROSALIE
HASEY, LISA BOLING, and LORI
BOLING RANDALL

By their attorneys,

Charles R. Bennett, Jr. (BBO # 37380)
Todd A. Newman (BBO # 629614)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108-3107
(617) 423-0400

JOHN NICOLACI,

By his attorneys,

Louis J. DiFronzo, Jr. (BBO #552410)
Kent D.B. Sinclair (BBO#639597)
SEYFARTH SHAW
World Trade Center East
Boston, MA 02210-2028
(617) 946-4800

DATED:      July 15, 2003
362661

CERTIFICATE OF SERVICE

I Hereby Certify That a True Copy Of The Above
Document Was Served Upon The Attorney Of Record

For Each Other Party By Mail (by Hand) On    7-15-03