UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                )
STEWART F. GROSSMAN,            )
TRUSTEE                         )
                Plaintiff,      )      C.A. No.  03-12641-FDS
                                )
v.                              )
                                )
DOMENIC NICOLACI                )
JOHN NICOLACI                   )
ROSALIE HASSEY                  )
LISA BOLING                     )
LORI BOLING RANDALL             )
                Defendants      )
_____)


**<u>PLAINTIFF'S PROPOSED JURY INSTRUCTIONS</u>**

# TABLE OF CONTENTS

Instruction 1: Function of the Court...............................................................................1-1

Instruction 2: Function of Jury.......................................................................................2-1

Instruction 3:  Role of Counsel .....................................................................................3-1

Instruction 4: Credibility of Witnesses. .......................................................................4-1

Instruction 5: Burden of Proof ......................................................................................5-1

Instruction 6: Inferences. ..............................................................................................6-1

Instruction 7: Standing of Bankruptcy Trustee ............................................................7-1

Instruction 8: Trustee's Power To Avoid Transfers And Recover Property .................8-1

Instruction 9: Fraudulent Transfer – Existence of Creditor .........................................9-1

Instruction 10: Fraudulent Transfer – Transfer Is Voidable ......................................10-1

Instruction 11: Definition of "Insider"........................................................................11-1

Instruction 12: "Antecedent Debt".............................................................................12-1

Instruction 13: Insolvency...........................................................................................13-1

Instruction 14: GAAP Principles Do Not Control ......................................................14-1

Instruction 15: Retrojection ........................................................................................15-1

Instruction 16: Definition of Debts .............................................................................16-1

Instruction 17: Underfunded Pension Liabilities ........................................................17-1

Instruction 18: Continental Debts ...............................................................................18-1

Instruction 19: "Reasonably Equivalent Value" .........................................................19-1

Instruction 20: Damages for Fraudulent Transfer.......................................................20-1

Instruction 21: Duties of Corporate Directors ............................................................21-1

Instruction 22: Duty of Loyalty ..................................................................................22-1

Instruction 23: Burden of Proof on Duty of Loyalty ...................................................... 23-1

Instruction 24: Shift of duty of loyalty ...................................................................... 24-1

Instruction 25: Duty Not To Permit Improper Stock Redemption ................................ 25-1

Instruction 26: Damages For Breach of Duty of Loyalty ............................................. 26-1

Instruction 27: Counterclaims .................................................................................. 27-1

Instruction 28: Contract .......................................................................................... 28-1

Instruction 29: Formation of Contract ...................................................................... 29-1

Instruction 30: Consideration ................................................................................... 30-1

Instruction 31: Lack of Consideration ...................................................................... 31-1

Instruction 32: Terms Of Contract ........................................................................... 32-1

Instruction 33: Breach of Contract ........................................................................... 33-1

Instruction 34: Damages ......................................................................................... 34-1

Instruction 35: Measure of Damages ........................................................................ 35-1

Instruction 36: No offset of damages ........................................................................ 36-1

### **Instruction 1: Function of the Court**

[Mr.] [Madam] Foreperson and members of the jury:

At this stage of every trial, after all the evidence has been presented and counsel on both sides have summed up or argued their cases, it becomes the duty and function of the judge who presided at the trial to instruct you, the jury, as to what the rules of law are by which you must be guided in your deliberations. It is important that you follow the rules of law as explained to you by the court.  I will instruct you on the rules of law that control in this case.

**Instruction 2: Function of Jury**

When it comes to determining the facts, that is your job. Determining the contested facts in each and every jury case is solely and exclusively the function and duty of the jury.

You must make your determination of the facts on the basis of the evidence that has been presented in the course of the trial. The evidence consists of the sworn testimony of the witnesses who testified on the witness stand [or whose deposition testimony was read or shown to you in the course of the trial], and the exhibits that have been introduced into evidence in the course of the trial. You will have those exhibits with you when you go to the jury room to deliberate.

The evidence does not include anything that may have been said by any of the counsel at anytime during the course of the trial. Nor does it include anything that I might have said or that I may say in the course of these instructions. The evidence, I repeat, consists of the sworn testimony of witnesses and the exhibits.

You should weigh and you should consider each material and credible fact that is in evidence. You should not go outside the evidence. You should approach your fact-finding function in as fair and impartial a manner as you possibly can, without any preconceived views, and without any bias, any prejudice, or any sympathy. Yours is purely a fact-finding function.

Now, while you must make your decision on the basis of the evidence--and you must do that--

that is not to suggest that you may not also use and apply your good, sound common sense, because you may.

In making your determination of the facts, it is necessary that you rely on your memory, your collective memory that is, of the testimony of the various witnesses who did testify. Even in a very short trial, it is not always easy to remember everything that a witness said or did not say. Nevertheless, it is your memory that must control. What I mean by that is just this: if at anytime in the course of the trial, most particularly during closing argument, but otherwise at anytime, any of the counsel may have said anything with regard to what a witness said or did not say that does not coincide with your memory, you should be guided by your memory of the testimony and your memory alone.

## Instruction 3:  Role of Counsel

It was the duty of the lawyers in this case to object when the other side offered evidence that the lawyer believed was not admissible under our rules of evidence.  They also had an obligation to ask to speak to me at the judge's bench about questions of law, which the law requires me to rule on out of your hearing.

The purpose of such objections and rulings is not to keep relevant information from you.  Just the opposite:  they are to make sure that what you hear is relevant to this case, and that the evidence is presented in a way that gives you a fair opportunity to evaluate its worth.

You should not draw any inference, favorable or unfavorable, to either attorney or his or her client for objecting to proposed evidence or asking me to make such rulings.  That is the function and responsibility of the attorneys here.

## Instruction 4: Credibility of Witnesses.

Because you are the sole judges of the facts, you are also, necessarily, the sole judges of the credibility, the believability, of each of the various witnesses who have testified. You have seen and heard them all. You can judge, as well as any group can judge, how much credence, how much reliance, and how much weight should be given to the testimony of each.

There are certain factors that jurors may, and perhaps should, take into consideration in judging the credibility of any witness in any case. They are the following:

a. First is the demeanor of the witness. This means his or her appearance and conduct on the witness stand. How did the individual strike you? Did his or her words ring true or did they not ring true? That is a factor to consider.

b. Another factor is the interest, if any, of the witness in the outcome of the trial. You are at perfect liberty to take this into consideration in judging the credibility of that witness.

c. A third factor is a witness's relationship or feeling for or against one side or the other, or the absence of any such relationship or feeling. You may consider such in judging credibility.

d. Another factor you may consider is any prior statement that a witness may have made that is in some way inconsistent with his or her testimony on the witness stand. You may also consider

any motive that a witness may have to lie or to stretch the truth.

e. When considering credibility, you may also judge the probability or improbability of the witness's testimony and also the opportunity, lack of opportunity, or extent of opportunity that the witness had to hear or to see those things about which he or she gave testimony.

As the sole judges of the facts, and therefore, the sole judges of the credibility of each witness, you may accept the testimony of any witness as completely true if you wish. By the same token, you may reject the testimony of any witness in its entirety as completely untrue if you wish to do that. Or you may accept some parts of a witness's testimony as true and reject other parts of that same testimony as untrue if that is what you find the facts to be.

In other words, ladies and gentlemen, it is your function, the function of the jury, to collectively evaluate the testimony of each witness and then to apply your good sound, common sense and intelligence in determining whether to believe or to disbelieve it, either totally or in part--in short, to determine just where the truth does lie.

**<u>Instruction 5: Burden of Proof</u>**

This as you know has been the trial of a civil case. We begin each civil case with the proposition that the plaintiff, the party who is seeking to recover damages from the other, has the burden of proving each essential element of his or her case by a fair preponderance of the evidence. There are exceptions to that rule. There are some issues as to which the defendant has the burden of proof. But, as a general rule, the plaintiff has the burden of proof by a fair preponderance of evidence.

That is a very important concept. It is important because it is a concept that has been developed over the years to assist people like you--to assist jurors--in performing their fact-finding function. It does require some explanation. What precisely does it mean?

Imagine that you are trying to determine the existence or nonexistence of some particular fact. You are trying to determine that something happened or did not happen. Imagine that on the one side you have a witness--call him Witness A, --testifying vigorously and vehemently that it did happen, it did occur; and, on the other side Witness B, testifying just as vigorously and just as vehemently that, "No, it did not occur." How should a jury approach that?

Well, first, the jury should consider all the evidence in the case; not just the testimony of Witness A and Witness B, but all of the evidence. If, after having done that, the jury is convinced or persuaded that the greater likelihood, the greater probability is that it did happen--it did occur-- then so the jury should find. If, on the other hand, after having considered all the evidence, the

jury is convinced or persuaded that the greater likelihood, the greater probability is that it did not happen--did not occur--then that should be the finding.

But now suppose that after having considered all the evidence, you simply do not know whom to believe. What then? It is at that point that this concept of burden of proof comes into play. The answer is that you must find against the party having the burden of proof of that particular fact. If after having considered all the evidence you are still in a state of indecision as to just which proposition is the more likely, the more probable, the party having the burden of proving that particular fact has simply not sustained his or her burden. Hence, you must find against that party on that particular point.

You will notice, I hope, that I have stressed the expression, "greater likelihood, greater probability." I have done that quite deliberately. A party in a civil case having the burden of proving a particular fact does not have to establish the existence of that fact as an absolute certainty. Neither does he or she have to establish the existence of that fact beyond reasonable doubt or to a moral certainty. That is the standard in a criminal case. But in a civil case--and this is a civil case--it is sufficient if the party having the burden of proving a particular fact establishes the existence of that fact as the greater likelihood, the greater probability. That is what preponderance of evidence really means: greater likelihood, greater probability.

## **Instruction 6: Inferences.**

While one party or the other has the burden of proving facts by a fair preponderance of evidence, that does not mean that every fact must be proved by direct evidence. This is because facts may be proved by inference, or what is sometimes called circumstantial evidence, as well as by direct evidence. I suggest that if you think about it, you will realize that all of us probably use inferences in one way or another every day of our lives. And, jurors, too, are permitted to draw inferences in performing their fact-finding duties.

For example, suppose you go to sleep at night and there is a fresh snowfall outside of your window with no footprints in it. Then you wake up and there are footprints in the snow outside your window. Based on what you know, you can infer that someone walked through the snow outside your window during the night. Such an inference is permissible even though you did not actually see someone walk past your window.

When you draw inferences, the basic facts from which the inferences are drawn must themselves be proved by a fair preponderance of evidence. In addition, any inference drawn must truly be a reasonable and a logical one. Facts must not be left to surmise, conjecture, or speculation. There must be a firm foundation of proof, but reasonable inferences may be drawn.

**<u>Instruction 7:  Standing of Bankruptcy Trustee</u>**

Cliftex Corporation is the debtor in a bankruptcy case.  Cliftex filed a voluntary Chapter 7

petition on August 16, 2000.  The plaintiff in this case, Stewart F. Grossman, is the duly

appointed, qualified and acting Chapter 7 Trustee of the Cliftex bankruptcy estate.  I instruct you

that as a matter of law, Mr. Grossman has standing to bring this action against Domenic

Nicolaci, Rosalie Hassey, Lori Boling Randall, and Lisa Boling for the benefit of the bankruptcy

estate.  By "standing," I mean that Mr. Grossman is the legal representative of the Bankruptcy

Estate and he has the authority to bring this action.


11 U.S.C § 544(b)

## Instruction 8: Trustee's Power To Avoid Transfers And Recover Property

On January 16, 1998, Cliftex Corporation purchased all the stock of Domenic Nicolaci, Rosalie Hassey, Lori Boling Randall, and Lisa Boling, and in return Cliftex transferred certain money and property to those individuals.   The plaintiff Trustee, Mr. Grossman, brought this action seeking to avoid those transfers and recover the amounts transferred for the benefit of the bankruptcy estate.

Under § 544(b)(1) of the Bankruptcy Code, a Trustee in Bankruptcy may avoid any transfer of an interest of the Debtor corporation (in this case Cliftex is the Debtor corporation) in property or any obligation incurred by the Debtor that is voidable under applicable non-bankruptcy law by a creditor holding an unsecured claim.  Pursuant to § 550(a)(1) of the Bankruptcy code, to the extent that a transfer is avoided under § 544, the Trustee may recover the property transferred, or the value of such property from the initial transferee of such transfer.  What does this mean?  It means that if the Trustee, Mr. Grossman, proves the elements of his fraudulent transfer claim, as I explain those elements to you, then he is entitled to avoid the transfer and recover the amounts transferred by Cliftex to defendants Dominic Nicolaci, Rosalie Hassey, Lori Boling Randall, and Lisa Boling.

To succeed on his fraudulent transfer claim, and recover the money and property transferred to the defendants, the Trustee must prove 1) the existence of an unsecured creditor who could have

avoided the transfers to the defendants, and 2) that the transfer to the defendants is voidable under non-bankruptcy law.  I will address each of these two elements in turn.

11 U.S.C. § 544(b)

11 U.S.C. § 550(a)

**Instruction 9: Fraudulent Transfer – Existence of Creditor**

The first thing the plaintiff Trustee must demonstrate is the existence of an unsecured creditor who could have avoided the payments made to the defendants. The Trustee does not have to prove the existence of any other creditors. As long as the Trustee has proven that there is at least one such unsecured creditor, then he has satisfied his burden of proof on this element.

It is *not* a requirement that the creditor who could have avoided the transfer have reduced his claim to a judgment, or obtained an execution. In other words, the Trustee does not need to prove that the creditor has a court judgment for the amount owed, as long as the creditor is an appropriate creditor with a claim against Cliftex Corporation.

It is also not a requirement that the Trustee prove that the amount of the unsecured creditor's claim exceed or equal the amount sought to be recovered by the Trustee. In other words, the Trustee must only prove that one creditor existed at the time of the transfer, even if that creditor's claim is less than the amounts the Trustee seeks to recover from the defendants

> 11 U.S.C. § 101(10)(A)
>
> 11 U.S.C. § 544(b)
>
> 5 COLLIER ON BANKRUPTCY § 544.09[1]
>
> SEE IN RE TRISTAR TECHNOLOGIES CO., 260 B.R. 319, 328 (Bankr. D. Mass. 2001)

**<u>Instruction 10: Fraudulent Transfer – Transfer Is Voidable</u>**

The second element that the plaintiff Trustee must demonstrate is that the transfer of money and property from Cliftex to the defendants is a voidable transfer under non-bankruptcy law. What does this mean? It simply means that there must be some statute or principle of law that allows the Trustee to undo the transfer and recover the amounts transferred. In this case, the Trustee's claim is under a Massachusetts statute, known as the Uniform Fraudulent Transfer Act, which is found in the Massachusetts General Laws at chapter 109A § 6. Under that statute there are two tests to determine whether there has been a fraudulent transfer. The Trustee may prove his claim under *either* test.

Under the first test, found in M.G.L. c. 109A, § 6(b), the Trustee must demonstrate:

(1) The existence of at least one unsecured creditor whose claim arose before the date of the transfer of money and property from Cliftex to the defendants; in other words before January 16, 1998;

(2) The transfer of money and property from Cliftex was to an "insider" for an antecedent (or pre-existing) debt;

(3) Cliftex was insolvent at that time; and

(4) The defendants had reasonable cause to believe that Cliftex was insolvent.

Under the second test, found in M.G.L. c. 109A, § 6(a), the Trustee must demonstrate:

(1) The existence of at least one unsecured creditor whose claim arose before the date of the transfer from Cliftex to the defendants; in other words before January 16, 1998;

10-1

(2)  Cliftex made the transfer of money and property to the defendants without receiving a reasonably equivalent value in exchange for the transfer; and

(3) Cliftex was insolvent at that time or became insolvent as a result of the transfer.

If you find that the plaintiff Trustee has proven each of these elements in either of these tests by a preponderance of evidence, then your verdict will be for the Plaintiff on the claim of fraudulent transfer.  The plaintiff Trustee does not need to prove all of the elements in both of these tests.  As long as you find that he has proven the elements of one of these tests, then he has met his burden of proof.

I will now instruct you further on some of the elements of these tests, in order to help you further understand the elements of the fraudulent transfer claims.

M.G.L. c. 109A, § 6(b)

M.G.L. c. 109A, § 6(a)

**<u>Instruction 11: Definition of "Insider"</u>**

In giving you the elements of the fraudulent transfer claim under M.G.L. c. 109A, § 6(b), one of the instructions I gave you was that the transfer of money and property must be to an "insider." Thus, you must determine whether the defendants in this case were "insiders" of Cliftex Corporation. You may ask, "What is an insider?" The term "insider" is defined in both the Bankruptcy Code and in the Massachusetts General Laws. In the case of a corporation, like Cliftex, an insider includes:

1. A director of the corporation;

2. An officer of the corporation;

3. A person in control of the corporation;

4. A relative of a director, officer, or person in charge of the corporation.

<div align="center">

11 U.S.C. § 101(31)(B)

M.G.L. c. 109A, § 2

</div>

**Instruction 12: "Antecedent Debt"**

In giving you the elements of the fraudulent transfer claim under M.G.L. c. 109A, § 6(b), I also instructed you that the transfer to an insider must be for an "antecedent" debt. This means that the debt which the corporation paid to an insider was a pre-existing debt. In this case, the transfer challenged by the plaintiff Trustee is the payment of money and property by Cliftex to the defendants to redeem their pre-existing shares of stock.

In this case, it is undisputed that the defendants owned their stock before January 16, 1998 and that Cliftex redeemed that stock on January 16, 1998. You must decide whether that was a payment for an antecedent debt.


        M.G.L. c. 109A, § 6(b)

        Cf. Yankee Microwave, Inc. v. Petricca
        Communications Systems, Inc., 53 Mass. App. Ct.
        497, 524, 760 N.E.2d 739 (2002) (stock redemption
        by insiders was a fraudulent conveyance).

**Instruction 13 -Insolvency**

In giving you the elements of the fraudulent transfer claim under both M.G.L. c. 109A, § 6(a) and § 6(b), I instructed you that one of the elements was that Cliftex was insolvent at the time of the transfer, or became insolvent as a result of the transfer.  The date of the transfer of money and property to the defendants was January 16, 1998.  Thus, you must determine whether Cliftex was insolvent as of January 16, 1998.

"Insolvency" is defined by both the Federal Bankruptcy Code and the Massachusetts General Laws.  Pursuant to § 101(32) of the Bankruptcy Code, and M.G.L. c. 109A, § 3(a), a corporation like Cliftex is "insolvent" when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."  That standard is very important so I will repeat it for you:  The law is that a company is "insolvent" when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."  Additionally, under M.G.L. c. 109A, § 3(b), a company is presumed to be insolvent by its general failure to pay its debts.

In determining whether or not Cliftex was insolvent, you may use a standard "balance sheet test" in determining insolvency. The balance sheet test focuses on the fair market value of Cliftex's assets and liabilities within a reasonable time of the transfer. You may consider Cliftex's debts as of the time of the transfer to the defendants and compare those debts to Cliftex's property at the time of the transfer. If the debts are larger than the property, then Cliftex was insolvent.

In utilizing this balance sheet test to determine Cliftex's debts and property, you may use Cliftex's balance sheets and financial statements.  However, Cliftex's financial statements are

not conclusive or presumptive evidence of the corporation's debts and property.  You may make

adjustments to the assets and the liabilities on Cliftex's balance sheets to reflect the actual debts

and property of the company, as you find them to be based on the evidence.

11 U.S.C. § 101(32)

M.G.L. c. 109A, § 3(a)

Industrial Commercial Electrical, Inc. v. Babineau (In re Industrial, Commercial Electrical, Inc.), 2004 Bankr.LEXIS 438, *21-22 (Bankr. D. Mass. 2004)(test to be applied for insolvency is the standard balance sheet test)

In re Roco Corp., 701 F.2d 978, 983-4 (1st Cir. 1983) (unaudited financial statements and historical balance sheets could be used by factfinder in determining solvency).

Murphy v. Robinson (In re Ipswich Bituminous Concrete Products, Inc.), 79 B.R. 511, 516-18 (Bankr. D. Mass. 1987)(factfinder relying on balance sheets and adjustment based on value of assets to determine insolvency)

In re Worcester Quality Foods, 152 B.R. 394, 403-404 (Bankr. D. Mass. 1993)(applying balance sheet test for insolvency with adjustments to value of assets and liabilities)

**Instruction 14: GAAP Principles Do Not Control**

You may have heard some evidence about Generally Accepted Accounting Principles, or

"GAAP."  I instruct you that GAAP principles *do not* control whether a corporation is solvent or

insolvent.  Rather, you must determine solvency based on the definition I gave you before,

namely whether "the sum of [Cliftex's] debts is greater than all of [Cliftex's] property, at a fair

valuation."  While you may certainly consider the balance sheets prepared under GAAP as some

evidence in deciding whether Cliftex was solvent, those balance sheets are not conclusive.  You

must also consider other evidence that you have heard relating to Cliftex's debts and property.

The GAAP principles and balance sheets are not conclusive evidence of solvency or insolvency.

Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc., 96 B.R. 275, 278 (9th Cir. BAP 1989)(GAAP does not control solvency analysis)

Arrow Electronics, Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1076 (9th Cir. 2000)(there is no generally accepted accounting principle for analyzing insolvency)

Travellers Int'l Ag v. Transworld Airlines, Inc. (In re Trans World Airlines, Inc., 180 B.R. 389, 410 (Bankr. D. Del. 1994)(GAAP does not control solvency analysis)

**Instruction 15: Retrojection**

In determining whether Cliftex was insolvent, you must determine whether there was insolvency

on the date of the challenged transfer.  In this case, that is the date of the Nicolaci stock

redemption, January 16, 1998.  In considering the evidence, you may make inferences as to

insolvency on that date.  In other words, if you find that Cliftex was insolvent on a date prior to

the transfer and at a date after the transfer, and there was no radical or substantial change in the

company's condition, then you may infer that Cliftex was insolvent on the date of the transfer.

Briden v. Foley, 776 F.2d 379, 382
(1st Cir. 1985)(affirming use of
retrojection inference in insolvency
analysis)

Hassan v. Middlesex National Bank,
333 F.2d 838, 840-41 (1st Cir. 1964)
cert denied. 379 U.S. 932
(1964)(approving the use of
retrojection analysis)

Braunstein v. Massachusetts Bank &
Trust Co., 443 F.2d 1281, 1284 (1st
Cir. 1971)(affirming retrojection
analysis)

**Instruction 16: Definition of Debts**

In instructing you on the legal test for insolvency, I used the word "debts," when I told you that the test is whether the sum of company's debts was greater than all of the company's property, at a fair valuation.  Now I want to define the word "debts" for you so you will know what is a debt under the law.

A "debt" is defined the same way by the Federal Bankruptcy Code and by the Massachusetts Fraudulent Transfer Statute.  A debt is defined as "a liability on a claim."  Thus, in considering whether an item was a debt of Cliftex, you must determine whether it was a liability on a claim.  A "claim" means a right to payment, whether or not that right is reduced to a judgment, whether or not it is liquidated or unliquidated, whether or not it is matured or unmatured, whether or not it is disputed or undisputed.   A claim can include a fixed claim or a contingent claim.

11 U.S.C. § 101(12)

M.G.L. c. 109A, § 2

11 U.S.C. § (5)

M.G.L. c. 109A, § 2

## Instruction 17: Underfunded Pension Liabilities

In this case, one of the issues is whether Cliftex's underfunded pension plan liability is a debt to be considered in the insolvency analysis. I instruct you that an underfunded pension plan liability may be a debt to be considered for purposes of an insolvency analysis. Thus, you may determine the amount of the underfunded pension plan liability in this case as a debt in analyzing whether Cliftex was insolvent at the time of the Nicolaci stock redemption.

In re Tennessee Chemical Co., 143 B.R. 468, 473-474 (Bankr. E.D. Tenn. 1992)( underfunded pension liability is a debt within the Bankruptcy Code's definition of debt and must be counted in balance sheet insolvency test)

In re Art Shirt Ltd., Inc., 93 B.R. 333, 337-338 (Bankr. E.D. Pa. 1988)(withdrawal liability under pension plan is a debt that must be considered in conducting insolvency analysis; federal policies inherent in ERISA and MEPPAA make it clear that such withdrawal liability fits the definition of debt)

In re CD Realty Partners, et al, 205 B.R. 651, 657-660 (Bankr. D. Mass. 1997)(debtor's withdrawal liability under pension plan was a "claim" within the meaning of the bankruptcy code, and collecting great weight of authority for this proposition in footnote 10).

**Instruction 18: Continental Debts**

A contingent debt is one which is not presently fixed but may become fixed in the future with the occurrence of some uncertain event.  The defendants have argued that the underfunded pension liability is a contingent debt.  Contingent debts are included in the determination of solvency.  If you determine that the underfunded pension liability is a Contingent debt, you may determine that the entire amount of the underfunded pension liability should be included in the determination of whether Cliftex was insolvent at the time of the Nicolaci stock redemption.  You may also discount the underfunded pension liability by the probability that the contingency will occur and the liability will become fixed.

In re Worcester Quality Foods, 152 B.R. 394, 403 (Bankr. D. Mass. 1993)

In re Art Shirt Ltd., Inc., 93 B.R. 333, 336 (E.D. Pa. 1988)

Lassman v. Goldstein (In re Goldstein), 194 B.R. 1, 2 (Bankr. D. Mass. 1996)

In re Xonics Photochem. 841 F.2d 198, 200 (7th Cir. 1988)

Black's Law Dictionary 321 (6th ed. 1990)

## **Instruction 19: "Reasonably Equivalent Value"**

In giving you the elements of a fraudulent transfer claim under M.G.L. c. 109A, § 6(a), I instructed you that one element was that Cliftex made the transfer of money and property to the defendants without receiving a reasonably equivalent value in exchange for the transfer.

In this case, you must determine whether the defendants gave "reasonably equivalent value" when they transferred their stock to Cliftex in return for the money and property transferred by Cliftex to the defendants.  In other words, you must determine whether the stock was reasonably equivalent in value to the money and property that the defendants received.

You must determine the value of the stock at the time of the transfer.  In doing so, you must determine whether the stock had any value to Cliftex, and if so what that value was. I emphasize that you must consider whether the stock had value to Cliftex, not whether it may have had value to any other person or entity.  If a corporation just reduces its outstanding shares by redeeming stock, and there is no other value to the corporation, then that is not an acquisition of an asset with value.

Furthermore, if you find that Cliftex was insolvent at the time of the transfer, as I have defined "insolvent" for you, then the stock of Cliftex was worthless.  The stock of an insolvent company is worthless as a matter of law.  Thus, if you find that Cliftex was insolvent, then you must also find that Cliftex did not receive "reasonably equivalent value" in the Nicolaci stock redemption.

M.G.L. c. 109A, § 6(a)

In re Roco Corp., 701 F.2d 978, 982  (1st
Cir. 1983)(a corporation's own shares are
worthless to the corporation, and are not
considered an asset)

Murphy v. Robinson (In re Ipswich
Bituminous Concrete Products, Inc.), 79
B.R. 511, 517 (Bankr. D. Mass.
1987)(corporation's own shares worthless to
corporation)

*see also* In re Vadnais Lumber Supply, Inc.,
1989 Bankr. LEXIS 538, *12-13 (stating,
"when a corporation purchases its own
stock, it receives no direct consideration in
return, whether or not the stock would have
value to another purchaser. Both fraudulent
transfer law and corporate law protect
creditors by treating the purchase as a form
of distribution to the selling shareholders, a
reduction in net worth rather than the
acquisition of an asset.")

In re Roco Corp., 701 F.2d 978, 982  (1st
Cir. 1983)(shares of an insolvent corporation
are worthless)

Allard v. Flamingo Hilton (In re Chomakos),
69 F.3d 769, 770 (6th Cir. 1995)(the
appropriate time for evaluating whether
reasonably equivalent value was given is the
time when the transfer was made)

**Instruction 20: Damages for Fraudulent Transfer**

If you find that there was a fraudulent transfer to the defendants, then you must proceed to consider the damages. The Trustee may recover the property transferred, or the value of such property. In other words, if you find that there has been a fraudulent transfer, then the plaintiff Trustee is entitled to recover the amount fraudulently transferred from Cliftex to Dominic Nicolaci, Rosalie Hassey, Lori Boling Randall, and Lisa Boling.

11 U.S.C. § 550(a)

M.G.L. c. 109A, § 9

**Instruction 21:  Duties of Corporate Directors**

A corporation is a legal entity created by state law for convenience in conducting business. Generally, it is treated as separate and distinct from its officers, directors, and shareholders.

At the time that the defendants transferred their stock to Cliftex in return for money and property, Dominic Nicolaci held a position as an officer and director of Cliftex.  As an officer and director, the defendant Nicolaci owed the corporation a fiduciary duty as a matter of law. Mr. Nicolaci owed Cliftex a duty of care and a duty of loyalty.

Normally, a fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action.  In the event of bankruptcy of the corporation, however, a fiduciary obligation is also enforceable by the trustee in bankruptcy.  Thus, in this case, I instruct you that the plaintiff Trustee has standing to bring a claim for breach of fiduciary duty against Mr. Nicoalci on behalf of the bankruptcy estate of Cliftex Corporation.

If you find from the evidence that the defendant Nicolaci breached his fiduciary duty to Cliftex, you shall find for the plaintiff Trustee on his claim for breach of fiduciary duty.

Guth v. Loft, Inc., 5 A.2d 503, 510 (Del. 1939)(duty of loyalty owed under Delaware law)

Graham v. Allis-Chalmers Mfg. Co, 188 A.2d 125, 130 (Del. 1963)(the directors of a Delaware corporation are required to discharge their duties in good faith and with the care that an ordinarily prudent person in

a like position would exercise under similar circumstances.)

*See* <u>FDIC v. Henderson</u>, 61 F.3d 421 (5th Cir. 1995) (duties of directors); <u>Durfee v. Durfee & Canning, Inc.</u>, 323 Mass. 187, 196, 80 N.E.2d 522 (1948); <u>Koch v. Koch Indus.</u>, 203 F.3d 1202 (10th Cir. 2000) (corporate fiduciary duties).

<u>Pepper v. Litton</u>, 308 U.S. 295, 306-307 (1939)(fiduciary obligations of directors are designed to protect the entire community of interests in the corporation, including creditors)

<u>Spiegel v. Beacon Participations, Inc.</u>, 297 Mass. 398, 410-411, 8 N.E.2d 895 (1937)(directors cannot serve two masters whose interests are antagonistic)

*See* <u>Harrison v. NetCentric Corp.</u>, 433 Mass. 465, 472 (2001)(law of state of incorporation controls internal claims like breach of fiduciary duty)

**<u>Instruction 22:  Duty of Loyalty</u>**

In this case, the plaintiff Trustee claims that the defendant Domenic Nicolaci breached his duty

of loyalty to Cliftex by approving and participating in the Nicolaci Stock Redemption on January

16, 1998.

One of the duties that a corporate director owes is the duty of loyalty to the corporation.  A

director is bound to act with absolute fidelity and is required to place his duties to the corporation

above every other financial or business obligation. Corporate directors cannot be permitted to

serve "two masters whose interests are antagonistic."  A corporate director is liable if, through

his bad faith, financial loss to the corporation results.  A director is responsible if he unlawfully

diverts the assets of the corporation.  Under this duty of loyalty, a director cannot put his

personal financial interests above the interests of the corporation.  When a director participates in

the approval of a transaction that enhances the personal financial gain of that director, it violates

the duty of loyalty.

<div style="margin-left: 50%;">

<u>Guth v. Loft, Inc.,</u> 5 A.2d 503, 510 (Del. 1939)(duty of loyalty owed under Delaware law)

<u>Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,</u> 506 A.2d 173, 182 (Del. 1986)(duty of loyalty mandates that a director not consider or represent interests other than the best interests of the corporation and its stockholders in making a business decision); *see also* <u>Weinberger v. UOP, Inc.,</u> 457 A.2d 701, 710 (Del. 1983)

</div>

*Cheff v. Mathes,* 199 A.2d 548 (Del. 1964)(when a director participates in the board's approval of transactions that enhance the personal financial gain that director, it violates the duty of loyalty); see also *Kaplan v. Goldsamt,* 380 A.2d 556 (Del. Ch. 1977)

Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 410-411, 8 N.E.2d 895 (1937)(director is required to place his duties to the corporation above every other financial or business obligation, and cannot serve two masters whose interests are antagonistic)

Healthco Int'l, Inc. v. Hicks, (In re Healthco Int'l Inc.), 208 B.R. 288, 302 (Bankr. D. Mass. 1997), *citing* Geddes v. Anaconda Copper Mining Co, 254 U.S. 590, 599 (1920)(directors owe the corporation a fiduciary duty of loyalty not to put their personal financial interests above the interests of the corporation).

Demoulas v. Demoulas Super Mkts., 424 Mass. 501, 528 (Mass. 1997)(director owes "paramount" duty of loyalty)

Weinberger v. UOP, Inc., 457 A.2d 701, 710 (Del. 1983)(business judgment rule rebutted when director has a personal financial interest in the transaction)

Johnson v. Wikowski, 30 Mass. App. Ct. 697, 711-712 (1991)(business judgment rule does not apply in self-dealing cases and where directors are on both sides of transaction)

In re Worcester Quality Foods, 152 B.R. 394, 401 (Bankr. D. Mass. 1993)(directors must be loyal and not place their own interests above that of corporation; burden is

on director to show fairness of a self-dealing transaction)

**Instruction 23: Burden of Proof on Duty of Loyalty**

When a corporate director is on both sides of a transaction, and the fairness of the transaction is challenged, the burden is on the director to show the entire fairness of the transaction and the full adequacy of the consideration.  The burden is on a director who engages in self-dealing to prove his actions were intrinsically fair, and did not result harm to the corporation.

In this case, Mr. Nicolaci was on both sides of the transaction.  On the one hand, he was on Cliftex's side as a director, and on the other hand, he was a personal beneficiary of the stock redemption.  Thus, in determining whether Mr. Nicolaci breached his duty of loyalty, the burden is *on Mr. Nicolaci* to prove to you that the transaction was intrinsically fair to Cliftex and that the stock he redeemed was adequate consideration for the money and property that he received.

Sterling v. Mayflower Hotel Corp., 93 A.2d 107, 109-110 (Del. 1952)(where they stood on both sides of the transaction, directors bear the burden of establishing its entire fairness, and it must pass the test of careful scrutiny by the courts)

Weinberger v. UOP, Inc., 457 A.2d 701, 710 (Del. 1983)("There is no 'safe harbor' for… divided loyalties in Delaware. When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain. . . . The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness,

23-1

sufficient to pass the test of scrutiny by the courts.")

<u>Demoulas v. Demoulas Super Mkts.</u>, 424 Mass. 501, 529-530 (Mass. 1997)(burden is on a director who engages in self-dealing to prove his actions were intrinsically fair, and did not result harm to the corporation)

<u>Johnson v. Wikowski</u>, 30 Mass. App. Ct. 697, 709-710 (1991)(when a corporate director is on both sides of a transaction, and the fairness of the transaction is challenged, the burden is on the director to show the entire fairness of the transaction and the full adequacy of the consideration)

<u>Johnson v. Wikowski</u>, 30 Mass. App. Ct. 697, 711-712 (1991)(business judgment rule does not apply in self-dealing cases and where directors are on both sides of transaction)

<u>In re Worcester Quality Foods</u>, 152 B.R. 394, 401 (Bankr. D. Mass. 1993)(directors must be loyal and not place their own interests above that of corporation; burden is on director to show fairness of a self-dealing transaction)

**<u>Instruction 24: Shift of Duty of Loyalty</u>**

Normally, the duties of corporate directors that I have described for you are for the benefit of the stockholders. However, when a corporation is insolvent the rights of creditors become paramount. Moreover, the interests of the creditors must be considered when the corporation is in the "vicinity" or "zone" of insolvency. Thus, when the corporation is insolvent or in the vicinity of insolvency, the fiduciary duties of the corporation's directors shift and they must consider the interests of all the corporation's constituencies, *including those of the corporation's creditors.*

In the circumstances of insolvency, or the zone of insolvency, a corporate director is not permitted to obtain for himself a preference over other creditors in respect to the corporation's assets and is not permitted to use his intimate knowledge of the corporation's affairs to the detriment of creditors. When a corporation is in the zone of insolvency, or is already insolvent, creditors have a right to expect that directors will not "divert, dissipate or unduly risk assets necessary to satisfy their claims."

If you find that Cliftex was insolvent, or in the zone of insolvency, in January 1998, then the fiduciary duties owed by Domenic Nicolaci shifted, and the interests of Cliftex's creditors had to be considered. If you find that in such circumstances Domenic Nicolaci diverted corporate assets to himself to the detriment of the company's creditors, then you may find that he breached his fiduciary duties.

I further instruct you that the plaintiff Trustee has standing to pursue this claim for breach of fiduciary duty, so if you find that Domenic Nicolaci breached this duty of loyalty by diverting

assets to himself to the detriment of Cliftex's creditors, you may award damages to the plaintiff

Trustee.

Healthco International, Inc. v. Hicks, Muse & Co., Inc. (In re Healthco Int'l Inc.), 208 B.R. 288, 300 (Bankr. D. Mass 1997)(duties shift to creditors in zone of insolvency, applying Delaware law; also, Trustee has standing to pursue this claim).

Richards v. The Mayfair, 287 Mass. 280, 289 (1934)(director not permitted to obtain for himself a preference over other creditors in respect to the corporation's assets and is not permitted to use his intimate knowledge of the corporation's affairs to the detriment of creditors).

Credit e Lyonnais Bank Nederland, N.V. v. Path Communications Corp., No. 12150, 1991 WL 277613, *34 (Del. Ch. Dec. 30, 1991)(shift of duties).

Geyer v. Ingersoll Publications Co., 621 A.2d 784, 787 (Del. Ch. 1992)

Clarkson Co., Ltd. v. Shaheen, 660 F.2d 506, 512 n.5 (2d Cir. 1981)(trustee has standing to pursue claim against directors and officers for breach of fiduciary duty running to creditors).

**Instruction 25: Duty Not To Permit Improper Stock Redemption**

The law does not permit a director to authorize a stock redemption in certain circumstances. A director is liable if he permits his corporation to redeem shares of its own stock at a time when the capital of the corporation is impaired, or when such a stock redemption would cause the capital of the corporation to be impaired. If a corporation is insolvent, its capital is impaired.

If you find that Cliftex was insolvent, then you may find that Domenic Nicolaci breached his duties as a director of Cliftex by permitting the stock redemption to proceed, and you may find him liable.

8 Del. C. § 160 (Corporation cannot redeem its own shares when the capital of the corporation is impaired)

8 Del. C. § 174(a)(directors are liable for violations of 8 Del. C. § 160).

Klang v. Smith's Food & Drug Ctrs., 702 A.2d 150 (Del. 1997)(defining impairment of capital)

M.G.L. c. 156B, § 61

Yankee Microwave, Inc. v. Petricca Communications Systems, Inc., 53 Mass. App. Ct. 497, 524, 760 N.E.2d 739 (2002) (mere assent of director is sufficient for liability).

**<u>Instruction 26: Damages For Breach of Duty of Loyalty</u>**


If you find that the defendant Domenic Nicolaci breached his duty of loyalty, then you must proceed to consider damages.  If there is a breach of the duty of loyalty, the Trustee is entitled to recover the damages caused by the breach of the duty of loyalty.

The general objective in awarding damages is to restore the injured party to the position that he or she would have been in if there had been no breach of fiduciary duty.

In this case, it is for you to determine what damages were caused by defendant Domenic Nicolaci's breach, if any.  In doing so, the damages may be measured by the amount that was improperly gained by the director who breached a duty.  The profit obtained by the director from his breach is an amount the plaintiff is entitled to recover.  You may also consider the amount of money that would restore to the corporation that which was taken from it in violation of the director's duty of loyalty.

<div align="right">

<u>Thorpe by Castleman v. CERBCO</u>, 676 A.2d 436, 445 (Del. 1996)(once disloyalty has been established, Delaware law requires that a fiduciary not profit personally from his conduct, and that the beneficiary not be harmed by such conduct).

<u>Demoulas v. Demoulas Super Mkts.</u>, 424 Mass. 501, 556 (Mass. 1997)(restitution of the gain is the proper remedy for breach of fiduciary duty)

</div>

**<u>Instruction 27: Counterclaims</u>**

The defendants, the Nicolacis, have made several counterclaims against the Trustee.   The counterclaims are:

1)   A claim by Dominic Nicolaci that Cliftex breached the Promissory Note given to him as part of the stock redemption on January 16, 1998;

2)   A claim by Domenic Nicolaci that Cliftex breached the Consulting Agreement given to him as part of the stock redemption on January 16, 1998;

3)   A claim by Domenic Nicolaci that Cliftex breached the Addendum to the Stock Purchase Agreement of January 16, 1998;

4)   A claim by all of the defendants that Cliftex breached a "warranty" provision in the Stock Purchase Agreement of January 16, 1998;

When you consider a counterclaim, the roles of the parties are reversed.  The burden of proof is on the defendants.  That means that the defendants must prove each element of their claims by a preponderance of the evidence.  All of defendants' counterclaims are based on breach of contract claims.  I will give you the elements that must be proven.  The defendants must prove all of these elements by a preponderance of the evidence, and if they fail to do so then you must find for the Trustee.

**<u>Instruction 28: Contract</u>**

A contract is a promise, or set of promises, between two or more persons to do or not do a certain thing.

Ordinarily, for there to be a contract, the parties must by their words or conduct express their mutual assent—that is, their agreement—to exchange promises. For example, in a contract for the purchase and sale of a house, the buyer promises to pay a certain amount of money to the seller on a certain date, and the seller promises to deliver to the buyer on that date a deed to the seller's house. Each party has agreed to exchange a promise for a promise by the other party.

Sometimes, the agreement is to exchange one party's promise for the other's performing, or refraining from performing, a particular action. For example, a homeowner promises a neighbor $20 if he will mow her lawn, and he does so. They have agreed to exchange the homeowner's promise to pay for the neighbor's action of mowing the lawn.

Massachusetts Superior Court Civil Practice
Jury Instructions § 14.1

## Instruction 29: Formation of Contract

In order to prove the existence of a contract with the defendant, the plaintiff must prove each of the following three elements by a preponderance of the evidence:

1.   that an offer was made;

2.   that the offer was accepted; and

3.   that the plaintiff and the defendant each gave up something of value, or promised to give up something of value. This is referred to under the law as "consideration."

<div style="text-align: right;">

Quinn v. State Ethics Comm'n, 401 Mass. 210, 216, 516 N.E.2d 124, 127 (1987); David J. Tierney Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass.App.Ct. 237, 239–41, 392 N.E.2d 1066, 1068–69 (1979)

Massachusetts Superior Court Civil Practice Jury Instructions § 14.1.2

</div>

## Instruction 30: Consideration

Consideration is something that is given in exchange for an offer. To establish consideration, the plaintiff must prove a benefit to the maker of the promise, or a loss, trouble, or inconvenience to, or a charge or obligation resting upon, the party to whom the promise is made.

A hope of a future benefit or a promise to contract in the future without any present agreement for that benefit is not valid consideration. A contract without either consideration or a valid substitute for consideration is unenforceable.

Massachusetts Superior Court Civil Practice Jury Instructions § 14.1.8

Congregation Kadimah Toras-Moshe v. DeLeo, 405 Mass. 365, 366, 540 N.E.2d 691, 692 (1989); Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 763, 384 N.E.2d 176, 180 (1978); Marine Contractors Co. v. Hurley, 365 Mass. 280, 286, 310 N.E.2d 915, 919 (1974); Cottage St. M.E. Church v. Kendall, 121 Mass. (Lothrop) 528, 529–30 (1877).

Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706, 592 N.E.2d 1289, 1292 (1992) (noting that a promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract); Congregation Kadimah Toras-Moshe v. DeLeo, 405 Mass. 365, 368, 540 N.E.2d 691, 693–94 (1989) (holding that an oral promise to donate money to a synagogue lacked consideration and was unenforceable); Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 357 Mass. 40, 42–43, 255 N.E.2d 793, 795–96 (1970) (stating that a promise that binds one to do nothing at all is illusory and cannot be consideration); Rosenfield v. United States Trust Co., 290 Mass. 210, 216, 195 N.E.2d 323, 325 (1935).

O'Connor v. National Metals Co., 317 Mass. 303, 306, 58 N.E.2d 153, 154–56 (1944); Bliss v. Negus, 8 Mass. 46, 51 (1811). See also Gill v. Richmond Co-Op Ass'n, 309 Mass. 73, 34

N.E.2d 509 (1941); <u>Jurgens v. Abraham</u>, 616
F.Supp. 1381, 1387 (D.Mass. 1985) (applying
Massachusetts law).

## <u>Instruction 31: Lack of Consideration</u>

As I have just told you, to meet their burden of proof on the issue of consideration, the

defendants must prove that they gave Cliftex some consideration in return for the promises made

by Cliftex in the alleged contract.  If you find that Cliftex was insolvent, as I defined that term

for you before, then the shares of Cliftex stock given up by the defendants had no value.

The stock of an insolvent company is worthless as a matter of law.  Thus, if you find that Cliftex

was insolvent, then you must also find that there was no consideration supporting the contracts

and you must find against the defendants on their contract-based counterclaims.

<u>In re Roco Corp.</u>, 701 F.2d 978, 982  (1st Cir. 1983) (shares of an insolvent corporation are worthless)

<u>Murphy v. Robinson (In re Ipswich Bituminous Concrete Products, Inc.)</u>, 79 B.R. 511, 517 (Bankr. D. Mass. 1987)(corporation's own shares worthless to corporation)

*see also* <u>In re Vadnais Lumber Supply, Inc.</u>, 1989 Bankr. LEXIS 538, *12-13 (Bankr. D. Mass. 1989) (stating, "when a corporation purchases its own stock, it receives no direct consideration in return, whether or not the stock would have value to another purchaser. Both fraudulent transfer law and corporate law protect creditors by treating the purchase as a form of distribution to the selling shareholders, a reduction in net worth rather than the acquisition of an asset.")

## Instruction 32:  Terms Of Contract

If you determine that a binding contract was formed, you must determine the terms of the contract. The terms of the agreement are those terms to which the parties mutually assented with reasonable certainty.

Massachusetts Superior Court Civil
Practice Jury Instructions § 14.1.11


Kravetz v. Merchants Distrib., Inc., 387
Mass. 457, 460, 440 N.E.2d 1278, 1280
(1982); Rosenfield v. United States Trust
Co., 290 Mass. 210, 195 N.E.2d 323
(1935)

## Instruction 33:  Breach of Contract

A breach of contract is a failure to comply with one or more terms of the contract. In order to recover for breach of contract, the nonbreaching party must have completely performed [his/her] obligations. Where one party to a contract has failed to perform [his/her] obligations, then as a matter of law the other party is thereafter excused from performing [his/her] contractual obligations.

In order to prevail on a breach of contract claim, a party must prove the following four elements by a preponderance of the evidence:

1.  that there is a contract,

2.  that the party performed its obligations under the contract (or is excused from performance),

3.  that the other party breached the contract, and

4.  that the nonbreaching party suffered damages as a result of the breach of contract.

<div align="right">

Massachusetts Superior Court Civil
Practice Jury Instructions § 14.1.19

</div>

### Instruction 34: Damages

If you find that there was a breach of contract on the counterclaims, then you must determine if the defendant Nicolacis are suffered damages.  You must calculate these damages separately from any damages you may have calculated on the plaintiff's claims against the defendants.  Do not attempt to offset or deduct one set of damages from the other.

The fact that I charge you on the measurement of damages is not, and should not be considered by you, as any indication that I think damages should be awarded. I give you these instructions on damages solely because I am required to charge you on all phases of the case that you might have to consider. If the Nicolacis have not proven that Cliftex breached the contract, then you will not consider the issue of damages.

If Cliftex did breach the contract, you must then decide the amount of the Nicolaci's damages, if any. Before the Nicolacis can recover damages under any theory of recovery, they must prove that the defendant's breach caused damages.

Massachusetts Superior Court Civil Practice Jury Instructions § 14.3.1 (modified)

Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass.App.Ct. 391, 397, 600 N.E.2d 599, 602 (1992).

## Instruction 35: Measure of Damages

The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract.

In order to recover damages, the Nicolacis must demonstrate that the damages complained of were caused by Cliftex's conduct. If the damages were caused by the Nicolacis themselves or by someone other than Cliftex, then the Nicolacis are not entitled to damages from the Trustee.

How do you compute contract damages?  If they are entitled to damages, the Nicolacis would be  entitled to recover damages sufficient to give them the benefit of their contractual bargain, as long as such damages are reasonably proved. In other words, the Nicolacis are entitled to those damages that would put them in a position to obtain that which [he/she] has bargained to obtain, so far as compensation in money can be computed by rational methods upon a firm basis in fact.

> Massachusetts Superior Court Civil Practice Jury Instructions § 14.3.1 (modified)
>
> Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 678 N.E.2d 180, further app. rev. denied, 425 Mass. 1102, 680 N.E.2d 101 (1997). Fernandes v. Union Bookbinding Co., 400 Mass. 27, 37–38, 507 N.E.2d 728, 734–35 (1987); Sackett v. St. Mary's Church Soc'y, 18 Mass.App.Ct. 186, 464 N.E.2d 956 (1984); John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass. 8, 95 N.E. 961 (1911).
>
> Productora E Importadora De Papel v. Fleming, 376 Mass. 826, 837–38, 383 N.E.2d 1129, 1136 (1978); White Spot Constr. Co. v. Jetspray Cooler, Inc., 344 Mass. 632, 635, 183 N.E.2d 719, 721–22 (1962); John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass. 8, 95 N.E. 961 (1911).

## Instruction 36: No Offset of Damages

If you have found that the Trustee is entitled to damages on any of his claims, and that the Nicolacis are entitled to damages on any of the counterclaims, then you must indicate the amount the damages for both parties on the verdict form that I will give to you.

You should *not* offset any of the damages, or attempt to do any offset calculations. Do not reduce the amount of damages you award to the Trustee by subtracting any damages to which you find that the Nicolacis may be entitled.

Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 817 (9th Cir. 1994) ("a fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim….[Setoffs] do not apply to actions by the Trustee to recover fraudulent transfers: 'It would defeat the purpose of the Bankruptcy Act's provision relating to fraudulent transfers to allow [defendant creditors] to offset the value of the property thus transferred to them by the amount of their unsecured claim against [the debtor].'")(*quoting* Bustamonte v. Johnson (In re McConnell), 934 F.2d 662, 667 (5th Cir. 1991) (other citations omitted).

5 Colliers on Bankruptcy, ¶ 553.03[3][e] (15th ed., 2004)(the general rule is that, in an action by a trustee to recover money paid or property transferred to a creditor as a fraudulent transfer, the creditor cannot offset this liability against the creditor's claim against the debtor.)

11 U.S.C. §502(d)(requiring the disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount for which the transferee is liable).

36-1