**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| STEWART F. GROSSMAN, TRUSTEE, <br>             Plaintiff, <br> <br> v. <br> <br> DOMENICK NICOLACI, <br> JOHN NICOLACI, <br> ROSALIE HASSEY, <br> LISA BOLING, and <br> LORI BOLING RANDALL, <br>             Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )  C.A. No. 1:03-12641-FDS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**<u>PROPOSED JURY INSTRUCTIONS</u>**

Pursuant to Fed. R. Civ. P. 51(a)(1), the Defendants request that the Court instruct the jury as set forth in these requests.

REQUEST 1
Nature of the Fraudulent Transfer Action

The first claim you must decide is brought under the Uniform Fraudulent Transfer Act, which I shall refer to as "the Act." The Act enables a bankruptcy trustee to "avoid," or in other words to take back, certain transfers. The Act defines "transfer" very broadly to include virtually every conceivable voluntary or involuntary disposition of real or personal property. In this case, the Trustee is looking to take back certain payments that were made to the Nicolaci family when they retired and left the employ of Cliftex Corporation.

In this action, the plaintiff is Stewart F. Grossman, who has been appointed as the Bankruptcy Trustee. I will refer to Mr. Grossman as the Trustee for Cliftex, which filed for bankruptcy on August 16, 2000. The defendants are Domenick Nicolaci, Rosalie Hassey, Lisa Boling, and Lori Boling Randall, whom I shall refer to collectively as the "Nicolaci Family." The Nicolaci Family owned 50 percent of Cliftex's stock. The other 50 percent was owned by two brothers, Joel and Walter Anapol.

In 1998, the Nicolaci Family retired from Cliftex and sold their stock in the company back to Cliftex for the aggregate sum of approximately $2 million, with the majority of the payments going to Domenick Nicolaci, who was a founder of Cliftex and its CEO for many years. The Trustee contends that the Nicolaci Family's stock was not worth $2 million. Accordingly, he seeks to claw back these funds into the Cliftex estate.

Authorities

Mass. G.L. c. 109A, §§ 1-12.

REQUEST 2
Elements of the Fraudulent Transfer Claim

The Trustee contends that Cliftex's purchase of the Nicolaci Family stock in connection with the Nicolaci Family retirement from Cliftex was a fraudulent transfer under the Act.

The Trustee asserts (1) that the payment was made to the Nicolaci Family when Cliftex was insolvent, and (2) that Cliftex received less than reasonably equivalent value in exchange for the payment. In order for the Trustee to prevail, the Trustee must establish each of these elements of his claim by a preponderance of the evidence.

Authorities

Mass. G.L. c. 109A, § 6(a).

REQUEST 3
The "Balance Sheet Test" for Insolvency

You may conclude that Cliftex was insolvent at the time of the Nicolaci stock purchase only if the sum of Cliftex's debts was greater than all of its assets, at a fair valuation. The Act requires you to employ the "balance sheet test" for insolvency, that is, to determine whether Cliftex's debts exceeded its assets on the purchase date by reference to Cliftex's balance sheet. If the balance sheet was prepared in accordance with Generally Accepted Accounting Principles, or "GAAP," then you should presume that its treatment of assets and liabilities is valid.

Authorities

Mass. G.L. c. 109A, § 3.

First Federal Savings & Loan Ass'n of Galion, Ohio v. Napoleon, 428 Mass. 371, 377-78 n.4 (1998).

Ohio Corrugating Co. v. DPAC, Inc. (In re Ohio Corrugating Co.), 91 B.R. 430, 438 (Bankr. N.D. Ohio 1988).

REQUEST 4
Treatment of Contingent Claims Under the Balance Sheet Test

In the present case, Cliftex's audited financial statements show that Cliftex was solvent at the time of the stock purchase because its assets exceeded its liabilities by more than $6 million in 1997 and by more than $3 million in 1998. The Trustee does not dispute that the audited financial statements reflect a solvent Cliftex. The Trustee asserts that the audited financial statements do not, but should, reflect an $11.6 million debt for unfunded pension liability.

Cliftex's obligation to make the $11.6 million payment was contingent on Cliftex going out of business and becoming unable to make its regular contributions to the pension fund. Accordingly, this obligation is known as a "contingent liability." When you apply the balance sheet test to determine whether Cliftex was solvent at the time of the stock purchase, you should not include this contingent liability unless the contingency required to trigger the liability was probable at the time of the transfer.

Accordingly, what you must decide is the likelihood that Cliftex would go out of business as of January 16, 1998, the date of the Nicolacis' retirement and sale of company stock back to Cliftex. In making your determination, you may consider only the circumstances that existed at that time. The fact that Cliftex filed a bankruptcy case two and a half years later is not a determinant of Cliftex's financial condition on the date of the stock purchase or of the likelihood that the unfunded pension liability would become due.

If you determine that this contingent liability should be included on the balance sheet, then you should calculate its value based on the probability that the contingency would occur. By way of example, if a contingent liability of $100 was only 10 percent

likely to occur, then you should calculate its value to be only $10. Thus, to illustrate further, if you determine that Cliftex was only 10 percent likely to go out of business as of January 16, 1998, then you should include only 10 percent of its unfunded pension liability on its balance sheet.

Authority

Lassman v. Goldstein (In re Goldstein), 194 B.R. 1, 2 (Bankr. D. Mass. 1996).

Covey v. Commercial National Bank of Peoria, 960 F.2d 657, 659-60 (7th Cir. 1992).

In re Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th Cir. 1988).

REQUEST 5
No Requirement to Fully Fund Pension Program

In assessing the likelihood that the pension liability would become due at some future date, you may consider that as of 1998, the law did not require a corporation to fully fund its pension program. You also may consider that GAAP generally did not require the contingent liability for future pension payments to be reflected in the balance sheet. The presumption was that the corporation would continue in business and pay its pension obligations as they became due.

Authority

29 U.S.C. §§ 1381-1453.

Ohio Corrugating Co. v. DPAC, Inc. (In re Ohio Corrugating Co.), 91 B.R. 430, 438 (Bankr. N.D. Ohio 1988).

Godchaux v. Conveying Techniques, Inc., 846 F.2d 306, 318-19 (5th Cir. 1988).

Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund, Civ. A. Nos. 86-2428, 87-1462, 1993 WL 120457, at *3 (W.D. Pa. Feb. 9, 1993).

REQUEST 6
Consideration of Business Planning and Funding Activity
Relative to Stock Purchase

In considering whether Cliftex was likely to stay in business as of January 16, 1998, you may consider the business planning and funding activity relative to the stock purchase. For instance, you may consider the business plan prepared by Cliftex at the direction of Joel Anapol, the report prepared by RAS Management Advisors, Inc. and its conclusion as to the reasonableness of the projections in the business plan, and the actions of Congress Financial Corporation and Joel Anapol in funding the retirement payments made to the Nicolaci Family in exchange for their Cliftex stock.

REQUEST 7
Verdict Based on Solvency

If you find that Cliftex was not insolvent as of the date of the retirement payments to the Nicolaci Family, then you should enter a verdict for the Nicolaci Family.

If you find that Cliftex was insolvent, you then must decide whether Cliftex received reasonably equivalent value for the retirement payments.

Authority

Mass. G.L. c. 109A, § 6(a).

REQUEST 8
Reasonably Equivalent Value

In determining whether Cliftex received reasonably equivalent value in exchange for the consideration it paid for the Nicolaci Family's stock, you must focus on whether the consideration paid was fair and reasonable, as opposed to being so high as to constitute a gift or a giveaway.

The concept of "reasonably equivalent value" requires that there be a *fair* exchange, but does not require that there be an *exact* exchange. Thus, you may find that Cliftex received reasonably equivalent value even if the benefit to Cliftex was not exactly equivalent to what Cliftex paid for the stock.

Your determination should be based on all the facts and circumstances of the case. You should compare what was given with what was received, taking into consideration both direct and indirect benefits to Cliftex.

Authorities

Ferrari v. Barclays Business Credit, Inc. (In re Morse Tool, Inc.), 148 B.R. 97, 135 n.40 (Bankr. D. Mass. 1992).

Murphy v. Meritor Savings Bank (In re O'Day Corp.), 126 B.R. 370, 393 (Bankr. D. Mass. 1991).

Tomsic v. Pitocchelli (In re Tri-Star Technologies Co.), 260 B.R. 319, 325 (Bankr. D. Mass. 2001).

REQUEST 9
The Value of Obligations to Shareholders
in a Closed Corporation

Cliftex was what is referred to as a closed corporation. A closed corporation is one where there are a small number of shareholders, usually with family relationships. In a closed corporation the law treats the shareholders more like partners than stockholders.

Unlike stockholders in a public corporation, whose benefits are derived from dividends and appreciation in the value of their stock, stockholders in small, closed corporations derive their benefits from being employed by the corporation and receiving a salary and fringe benefits. In this case, when the Nicolaci Family agreed to sell their stock back to Cliftex, they were agreeing to give up not only their right to share in Cliftex's profits but also their entitlement to receive salaries and benefits.

In determining whether Cliftex received a fair exchange, you can consider what the Nicolaci Family gave up in salaries and benefits, which was estimated to be more than $700,000 per year. You can also consider that as a result of the transaction, Cliftex received $400,000.00 as the cash surrender value of a certain policy on th elife of Domenic Nicolaci.

Authority

Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 592-93 (1975).

Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 849-50 (1976).

REQUEST 10
Corporate Fiduciary Duties

The Trustee is also suing Defendant Domenick Nicolaci for breach of fiduciary duty. You are instructed that corporate officers, directors, and controlling shareholders owe a fiduciary duty to the corporation and noncontrolling shareholders. As an officer and director of Cliftex, Mr. Nicolaci owed that corporation and its shareholders fiduciary duties. In this case, it is alleged that Mr. Nicolaci breached the fiduciary duties known as the duty of care and the duty of loyalty. I shall now give you general instructions on the law concerning these duties.

Authority

Jessie v. Boynton, 372 Mass. 293, 304 (1977).

Black v. Parker Manufacturing Co., 329 Mass. 105, 111 (1952).

REQUEST 11
Duty of Care

Officers and directors of corporations have a duty to exercise care in carrying out their functions. This means that they must discharge their duties in good faith, with the care that a person in a like position would reasonably believe appropriate under similar circumstances, and in a manner they reasonably believe to be in the best interests of the corporation.

On January 16, 1998, Mr. Nicolaci, after having owned and operated Cliftex for decades with his brother John and his colleagues Joel and Walter Anapol, sold his Cliftex stock back to Cliftex. The stock sale enabled Mr. Nicolaci, who was in his senior years, to enter retirement with a degree of financial security. It also gave complete control of Cliftex to the Anapols, the other founding family.

If you determine that Mr. Nicolaci sold his stock back to Cliftex in good faith, that a reasonably prudent person would make such a sale under similar circumstances, and that Mr. Nicolaci reasonably believed the sale would be in the best interests of Cliftex, then you must find that Mr. Nicolaci did not breach his duty of care to the company.

Authority

Mass. G.L. c. 156D, §§ 8.30(a)(1)-(3), (c), 8.42(a)(1)-(3), (c)

REQUEST 12
Best Interests of the Corporation

In determining what a director reasonably believes to be in the best interests of the corporation, you are instructed that a director may consider:

- the interests of the corporation's employees, suppliers, creditors, and customers;

- the economy of the state, the region, and the nation;

- community and societal considerations; and

- the long-term and short-term interests of the corporation and its shareholders, including the possibility that these interests may be best served by the continued independence of the corporation.

Thus, you may find that it was appropriate for Mr. Nicolaci to have considered, among other things, that the stock sale would enable Cliftex's remaining shareholders, the Anapols, to continue to independently run the company and to implement their plan for bringing Cliftex long-term success.

Authority

Mass. G.L. c. 156D, § 8.30(a)(3).

REQUEST 13
Reliance on Information Prepared by Others

In discharging their duties, directors and officers who do not have knowledge that makes their reliance unwarranted are entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:

(1)  one or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent with respect to the information, opinions, reports or statements presented;

(2)  legal counsel, public accountants, or other persons retained by the corporation, as to matters involving skills or expertise the director reasonably believes are matters (i) within the particular person's professional or expert competence or (ii) as to which the particular person merits confidence; or

(3) a committee of the board of directors of which the director is not a member if the director reasonably believes the committee merits confidence.

You may therefore find that Mr. Nicolaci was entitled to rely on the business plan furnished by the Anapols relative to the projected benefits of the stock sale to Cliftex; the report of RAS Management Advisors relative to the reasonableness of the assumptions made in that business plan; and the reports furnished by Ernst & Young LLC, Cliftex's independent auditors, relative to Cliftex's financial condition; provided that Mr. Nicolaci did not have knowledge that would render such reliance unreasonable.

Authority

Mass. G.L. c. 156D, §§ 8.30(b)(1)-(3), 8.42(b)(1), (2).

REQUEST 14
Duty of Loyalty

The duty of loyalty permits directors and officers to participate in corporate transactions in which they have a direct or indirect personal interest, provided that any one of the following is true:

(1) the material facts of the transaction and the director's or officer's interest were disclosed or known to the board of directors or a committee of the board of directors and the board of directors or committee authorized, approved, or ratified the transaction;

(2) the material facts of the transaction and the director's or officer's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction; or

(3) the transaction was fair to the corporation.

Accordingly, if you determine that the Defendants in this action, as well as Joel and Walter Anapol, who collectively owned 100 percent of Cliftex's stock, were aware of and approved the stock sale, then you must conclude that Mr. Nicolaci did not violate his duty of loyalty to Cliftex.

Authority

Mass. G.L. c. 156D, § 8.31.

Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501 (1997).

In re Mi-Lor Corp., 348 F.3d 294 (1st Cir. 2003).

REQUEST 15
Remedies

If the Trustee proves every element of his claim for either fraudulent transfer or breach of fiduciary duty by a preponderance of the evidence, then he may avoid the transfer; that is, he may undo the transfer and take back the consideration paid by Cliftex for the Nicolaci Family's stock. If, however, the Plaintiff fails to prove any element of either claim by a preponderance of the evidence, then, with respect to that claim, he is not entitled to recover anything from any of Defendants, who may keep all of the proceeds of the stock sale.

Authority

Mass. G.L. c. 109A, § 8.

Mass. G.L. c. 156B, § 61.

REQUEST 16
Damages

If the Trustee establishes his claim for either fraudulent transfer or breach of fiduciary duty against the Nicolaci family by establishing each element by a preponderance of the evidence, you must determine what amount, if any, the Trustee is entitled to receive.

The measure of damages is the amount paid the Nicolaci Family, less any benefits received by Cliftex.  In this case, the Trustee seeks to recover approximately $2 million, which constitutes the aggregate amount of the payments made to the Nicolaci Family in exchange for their stock.

The Nicolaci Family asserts that the Trustee is entitled to recover nothing.  But if the Trustee is entitled to a recovery, the amount of that recovery must be reduced by the benefits received by Cliftex.  Those benefits consist of the savings Cliftex has enjoyed since January 16, 1998 on account of the extinguishment of its obligation to pay salaries and fringe benefits to the Nicolaci Family and the recovery of the cash surrender value of the life insurance policy.

Respectfully submitted,

DOMENICK NICOLACI, ROSALIE HASSEY, LISA BOLING, and LORI BOLING RANDALL,

By their attorneys,

/s/ Charles R. Bennett, Jr.
Charles R. Bennett, Jr. (BBO # 037380)
Todd A. Newman (BBO # 629614)
HANIFY & KING, P.C.
One Beacon Street
Boston, MA 02108
(617) 423-0400

DATED: December 6, 2004

CERTIFICATE OF SERVICE

I, Charles R. Bennett, Jr., hereby certify that I have this 6th day of December 2004 caused a copy of the foregoing submission, captioned "Proposed Jury Instructions," to be served upon counsel for each other party by means of the ECF filing system.

/s/ Charles R. Bennett, Jr.
Charles R. Bennett, Jr.

416550-v2